700 S.E.2d 462

**Franklin HUTSON, Appellant**

**v.**

**S.C. STATE PORTS AUTHORITY, Employer, and State Accident Fund, Carrier, Respondents.**

**No. 4737.**

Court of Appeals of South Carolina.

Submitted May 3, 2010.

Decided Sept. 8, 2010.

Rehearing Denied Oct. 29, 2010.

---

Thomas M. White, of Goose Creek, for Appellant.

Margaret Mary Urbanic, of Charleston, for Respondents.

THOMAS, J.

This is a workers' compensation case. At issue in this appeal is the award to the claimant, Franklin Hutson, following his attainment of maximum medical improvement (MMI), that limited his recovery to correspond with a thirty-percent loss of use to his back. We affirm in part and remand this matter to the commission for further proceedings.[1]

## FACTS AND PROCEDURAL HISTORY

In 1997, Hutson began working as a crane operator for the State Ports Authority (SPA). He had extensive prior experience in this line of work and attained an average weekly salary of $1,730. On October 21, 2004, Hutson was injured while attempting to remove a container from a ship. SPA admitted the injury and paid Hutson benefits.

In December 2004, Hutson began treatment with Dr. Stovall, an orthopaedic surgeon. On June 27, 2005, Dr. Stovall determined Hutson reached MMI and discharged him, noting that surgical intervention would not help him. Dr. Stovall assigned Hutson an impairment rating of ten percent of the whole person for his injury. He also noted that Hutson's permanent work restrictions would include lifting no more

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

than thirty-five pounds on an occasional basis and no more than twenty-five pounds on a frequent basis, but otherwise opined that Hutson "should be able to carry on a moderate level of activity at medium work capacity."

On July 29, 2005, Hutson filed a request before the South Carolina Workers' Compensation Commission seeking continuation of his benefits. Hutson maintained he was permanently and totally disabled because of the effect of his injury on his back and right leg. On August 9, 2005, SPA filed a response denying Hutson was permanently disabled and admitting that only Hutson's back injury was compensable. On August 31, 2005, the State Accident Fund, on behalf of SPA, filed a Form 21 in which it sought to stop compensation on the ground that Hutson had reached MMI. The Fund also requested credit for overpayment of temporary total compensation.

When the matter first came before the single commissioner, Hutson had not yet completed the training at the South Carolina Vocational Rehabilitation Center that his vocational consultant had recommended. The matter was continued pending either Hutson's completion of the program or a determination that he was unable to undergo further training.

The single commissioner heard the matter on August 1, 2006. Hutson testified he was forty-four years old and had finished high school. He further testified he had studied business management, culinary arts, and food sanitation at Trident Tech, but never received a degree or certificate. For most of his adult life, he had worked as a crane operator, and the only other significant experience he had was work as a rigger. He was unable to return to either line of work under the restrictions that were imposed as a result of his injury. Hutson described at length how the pain he experienced from his injury affected his day-to-day living. He acknowledged that when he was twelve, his hand was injured when someone shot him with a high-powered rifle. The accident resulted in a loss of coordination and several unsuccessful surgeries, but did not affect his ability to perform his work as a crane operator before his accident.

Hutson also testified that, as his vocational consultant had recommended, he made several visits to Vocational Rehabilitation, but was not offered any type of education, training, or

other help. Although Hutson estimated he made three visits, the single commissioner found the program was commenced and completed on October 9, 2005. Hutson stated he then made unsuccessful applications for positions in a variety of settings, including a grocery store, a plumbing company, and a landscaping business.

In response to questions from his attorney about his future plans, Hutson stated he wanted to start a business of his own and was looking into a restaurant business. He testified he had studied culinary arts and other food-related courses at Trident Tech, and his family had been in the restaurant business "all their lives." He further noted that cooking, a pursuit that he enjoyed, was "not as strenuous as manual labor," and surmised he could make a decent salary if he could supervise others to work for him. The single commissioner himself questioned Hutson about his plans to pursue a career in the food service industry, asking Hutson if he was sure he could run a restaurant. Hutson answered he was "sure" he could, but was unable to say how much money he could earn. On redirect examination, however, Hutson testified that one reason he decided on a plan to open a restaurant was to try to move up to a higher income bracket.

By order dated January 11, 2007, the single commissioner found Hutson had reached MMI on June 27, 2005. The commissioner further found Hutson failed to prove a loss of earning capacity to qualify for compensation under the general disability statutes; however, he found Hutson suffered a thirty-percent loss of use to his back and awarded compensation for a scheduled loss. In addition, the Fund was awarded a credit for overpayment of temporary total benefits.

Hutson moved for reconsideration. The single commissioner held a second hearing, but declined to alter his ruling. Hutson appealed the single commissioner's decision to the appellate panel, which, in a 2–1 vote, affirmed the single commissioner. Hutson then petitioned for judicial review. Following a hearing on March 11, 2008, the court of common pleas affirmed the appellate panel's order.[2]

---

2. In her order, the circuit judge noted the single commissioner assigned a thirty-percent impairment to the "whole person." The single com-

## ISSUES

A. Was there substantial evidence to support a finding that Hutson was capable of running a restaurant and therefore could not receive compensation for partial disability?

B. Was the decision to limit Hutson's recovery to loss of use of his back an error of law?

C. Should the matter have been remanded to the commission for findings of fact regarding Hutson's current earning capacity or the extent of his injuries?

## STANDARD OF REVIEW

■ "In workers' compensation cases, the Full Commission is the ultimate fact finder." *DeBruhl v. Kershaw County Sheriff's Dep't*, 303 S.C. 20, 24, 397 S.E.2d 782, 785 (Ct.App. 1990). "Our standard of review requires that we determine whether the circuit court properly found the Commission's findings of fact are not supported by substantial evidence in the record." *Doe v. S.C. Dep't of Disabilities and Special Needs*, 377 S.C. 346, 349, 660 S.E.2d 260, 262 (2008). "While a finding of fact of the commission will normally be upheld, such a finding may not be based upon surmise, conjecture, or speculation, but must be founded on evidence of sufficient substance to afford a reasonable basis for it." *Edwards v. Pettit Constr. Co.*, 273 S.C. 576, 579, 257 S.E.2d 754, 755 (1979). "Under the scope of review established in the APA, this Court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Bass v. Isochem*, 365 S.C. 454, 467, 617 S.E.2d 369, 376 (Ct.App.2005).

## LAW/ANALYSIS

A. Evidence of wage loss

■ In his order, the single commissioner noted that had Hutson not made assurances that he was capable of running a

---

missioner, however, found Hutson suffered a thirty percent loss of use of his back.

restaurant, he would have been found to be permanently and totally disabled. On appeal, Hutson does not take issue with the denial of compensation for total disability; however, he asserts he is entitled to recover for partial disability. We disagree.

■ Under the South Carolina Workers' Compensation Act, "a claimant may proceed under § 42–9–10 or § 42–9–20 to prove a general disability; alternatively, he or she may proceed under § 42–9–30 to prove a loss, or loss of use of, a member, organ, or part of the body for which specific awards are listed in the statute." *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990).[3] "It is well-settled that an award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing." *Id.* A reversal of the finding that Hutson could not recover under section 42–9–20, then, would require a showing by Hutson that the record lacked substantial evidence to support the appellate panel's determination that he failed to show a loss of earning capacity resulting from his injury. We hold, however, that there was substantial evidence in the record to support the finding that Hutson was capable of running a restaurant and that this finding in turn precluded an award under section 42–9–20.

On appeal, Hutson contends the only evidence to support the finding that he could run a restaurant was his own testimony, which he describes as "speculative." He further argues the commissioner and the appellate panel disregarded the only expert evidence in the record, namely, the written statement of his vocational consultant. We do not agree with these arguments.

---

**3.** Section 42–9–10 of the South Carolina Code (1985 & Supp.2009) describes various criteria that satisfy the requirements for a finding that a claimant is totally disabled and the method for computing the compensation to which a totally disabled claimant is entitled. Section 42–9–20 of the South Carolina Code (1985) gives the method for computing compensation for partial disability. In section 42–9–30 of the South Carolina Code (1985 & Supp.2009), the legislature provides a detailed schedule of varying time periods of compensation for particular injuries. This section was amended in 2007; however, the changes do not affect the merits of this appeal.

First, as the South Carolina Supreme Court has stated: "[W]hile medical testimony is entitled to great respect, the fact finder may disregard it if there is other competent evidence in the record." *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 340, 513 S.E.2d 843, 846 (1999). We see no reason not to apply this rule to other expert testimony.

Moreover, we disagree with Hutson's position that the vocational consultant's opinion was the only expert assessment of his ability to work.[4] According to his notes, Dr. Stovall opined that Hutson "should be able to carry on a moderate level of activity at the medium work capacity" and assigned only weight-lifting restrictions. In addition, on the advice of his attorney, Hutson consulted another physician, who indicated that Hutson could return to work on light duty.

We also agree with the circuit judge that Hutson's testimony regarding his plans to work in the restaurant business was not speculative. Hutson stated (1) he had studied culinary arts and food sanitation at Trident Technical College; (2) his family had been in the restaurant business for many years, so he was aware of the demands of the work and the initial investment necessary to invest in an establishment; (3) since his release from treatment he had been working on the restaurant project, researching locations, getting menu selections, and pricing equipment; and (4) he could perform in a supervisory capacity as well as work the register. We do not believe that the fact that Hutson had never actually attempted to handle the day-to-day tasks of running a restaurant necessarily makes his statements speculative. *Cf. Sellers v. Pinedale Residential Ctr.*, 350 S.C. 183, 191–92, 564 S.E.2d 694, 699 (Ct.App.2002) (rejecting the employer's argument that evidence of the claimant's future earnings was too speculative, that evidence consisting of (1) the claimant's demonstrated interest, aptitude, and ability to become an electrician, (2) his

---

4. Hutson may have misinterpreted the vocational consultant's opinion regarding his ability to work. In his brief, he asserts that the vocational consultant indicated that "upon successful completion of a vocational training program, ... his earnings would be between $5.15 and $6.50 an hour." The consultant actually stated that *without* a vocational rehabilitation plan, she was "of the opinion that Mr. Hutson will encounter very significant difficulty re-entering the competitive job market and will be relegated to at or near minimum wage ($5.15–$6.50 per hour)."

stated ambition to become a master electrician, and (3) his demonstrated work ethic).

Finally, we concur in the single commissioner's decision to emphasize the fact that the testimony about Hutson's ability to work in a restaurant came from Hutson himself, who had the burden of proving his case. *Cf. Smith v. Michelin Tire Corp.*, 320 S.C. 296, 298, 465 S.E.2d 96, 97 (Ct.App.1995) (affirming the denial of benefits for the claimant's alleged psychological problems even though she received benefits for permanent partial disability for a physical injury and noting "[t]he claimant has the burden to prove such facts as will render the injury compensable"). This emphasis seems especially appropriate considering the efforts by the single commissioner to allow Hutson to qualify or otherwise explain his testimony about his ability to pursue a career in the restaurant business. Moreover, Hutson also admitted he drove himself to the hearing and took care of his household chores. Although these admissions alone may not support a finding that he could manage a restaurant, they would not undermine it.

B. Limitation of Hutson's recovery to loss of use of his back

 Hutson alleges error in the determination that his recovery should be limited to the loss of use of his back, pointing to statements by the single commissioner both during the hearing and in his order that he had intended to take into account his belief that Hutson's injury affected his right leg as well as his back and the combination of the two injuries would enable Hutson to recover under section 42–9–20 as well as section 42–9–30. As we have previously determined, the record has substantial evidence to support the appellate panel's finding that Hutson did not prove a loss of earning capacity that would enable him to receive compensation benefits under section 42–9–20. We agree with Hutson, however, that he may be entitled to additional compensation under section 42–9–30 for the symptoms he was experiencing with his leg after his accident.

Although "an award under general disability statutes must be predicated upon a showing of a loss of earning capacity, . . . an award under the scheduled loss statute does not require

such a showing." *Fields,* 301 S.C. at 555, 393 S.E.2d at 173. "An award under the scheduled loss statute, however, is premised upon the threshold requirement that the claimant prove a loss, or loss of use of, a specific 'member, organ, or part of the body.'" *Id.* at 556, 393 S.E.2d at 173 (quoting S.C.Code Ann. § 42–9–30(22) (Supp.2009)). Although most of the reported decisions concerning claims for more than one scheduled injury focus on whether the claimant is eligible to recover under one of the general disability statutes, the South Carolina Supreme Court has expressed its approval of awarding compensation for multiple scheduled losses under section 42–9–30. *See Lail v. Georgia–Pacific Corp.* 285 S.C. 234, 236, 328 S.E.2d 911, 912 (1985) (reversing an award for loss of use of the hand and remanding the matter to the commission for factual findings regarding the percentage of loss of use of the thumb and third finger and referencing the "legislative plan providing scheduled amounts for loss of use of thumbs and fingers").

In his order, the single commissioner made a finding of fact that Hutson suffered radicular symptoms in his right leg that affected the functioning of the limb. He reiterated this finding when, in commenting on Hutson's assurances that he was capable of running a restaurant, he indicated that but for this testimony, he would have found Hutson to be permanently and totally disabled "with affects to the right leg." Given this finding, which neither the SPA nor the Fund has appealed, we hold Hutson has established at least a prima facie case for compensation for the injury to his leg pursuant to section 42–9–30 and remand the matter to the commission for further findings of fact on this matter based on the present record. *See Sigmon v. Dayco Corp.,* 316 S.C. 260, 262, 449 S.E.2d 497, 498 (Ct.App.1994) (noting that only the commission is authorized to make findings of fact in workers' compensation cases and remanding the matter to the commission for a determination anew based on the present record of the claimant's right to workers' compensation benefits).

C. Remand

Finally, Hutson argues the court of common pleas should have remanded the matter to the commission for findings of fact regarding his current earning capacity or the extent of his

injuries. In view of our decisions to affirm the finding that he is not entitled to benefits under section 42–9–20 and to remand the issue of additional compensation for his leg injuries pursuant to section 42–9–30, we decline to address this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when its decision on a prior issue is dispositive).

## CONCLUSION

We affirm the finding that Hutson failed to show a loss of earning capacity that would have entitled him to compensation under section 42–9–20 following his attainment of MMI. We hold, however, Hutson may be entitled to additional compensation under section 42–9–30 for injuries to his leg and therefore remand this case to the commission for further findings of fact on this issue.

**AFFIRMED IN PART AND REMANDED.**

FEW, C.J, and PIEPER, J., concur.