732 S.E.2d 500

**Franklin HUTSON, Petitioner,**

v.

**SOUTH CAROLINA STATE PORTS AUTHORITY, Employer, and State Accident Fund, Carrier, Respondents.**

**No. 27171.**

Supreme Court of South Carolina.

Heard April 4, 2012.

Decided Sept. 19, 2012.

Thomas M. White, of the Steinberg Law Firm, of Goose Creek, for Petitioner.

Matthew C. Robertson, of Merritt, Webb, Wilson & Caruso, of Columbia, and Margaret Mary Urbanic, of Clawson & Staubes, of Charleston, for Respondents.

Justice HEARN.

In this workers' compensation appeal, we must determine whether speculative testimony by the claimant concerning his possible future work as a restaurateur qualifies as substantial evidence to establish he did not sustain a wage loss pursuant to Section 42–9–20 of the South Carolina Code (1976). We hold it does not and therefore reverse and remand.

## FACTS/PROCEDURAL HISTORY

Frank Hutson was working as a crane operator for the State Ports Authority when he suffered an injury to his lower

back and legs while attempting to remove a container from a ship. Although he initially thought he had just pulled a muscle, he was diagnosed with a disc bulge at L2–3 and spondylosis at L5–S1. His treatment included steroid injections, physical therapy, and use of a back brace. After reaching maximum medical improvement, he filed a Form 50 with the workers' compensation commission for continued benefits alleging permanent and total disability pursuant to Sections 42–9–10 and 42–9–30 South Carolina Code (1976 & Supp.2011) or, alternatively, a wage loss under Section 42–9–20. He also asked to receive the award in lump sum.

Although the Ports Authority and its insurance carrier, the State Accident Fund (collectively, Respondents), admitted the accident and the back injury, they disputed the claims to his legs and argued he should receive only permanent partial disability benefits. They also objected to Hutson's request that his benefits be paid in a lump sum.

The case proceeded to a hearing before the single commissioner. At the hearing, Hutson presented an employability evaluation report of a vocational specialist, Jean Hutchinson. Hutchinson noted that Hutson "had significant impairment in his ability to tolerate activities of daily living with maximum sitting and standing capability at fifteen minutes and maximum lifting capability at twenty pounds." Although Hutson had taken a few courses at Trident Technical College in business management, culinary arts, and food sanitation, he never completed a degree or certification program in any of those areas. Hutson had spent his entire working life employed in manual labor, primarily as a crane operator. Noting that he possessed no transferable skills to perform other work within his functional capacity, Hutchinson concluded:

> [Hutson] will require a myriad of services to include career counseling to determine an occupational area that is consistent with his physical restrictions, occupational skill training in either a classroom or on-the-job setting, and selected job placement. Successful completion of these steps can reduce his disability with regard to employment. Without this or a similar vocational rehabilitation plan, I am of the opinion that Mr. Hutson will encounter very significant difficulty re-entering the competitive job market and

will be relegated to at or near minimum wage ($5.15–$6.50 per hours).

Thus, according to the vocational expert, Hutson's earning ability post injury was slightly less than $14,000 per year compared to the approximately $90,000 per year he earned as a crane operator.

Hutson testified at the hearing on his plans for future employment, stating that he was interested in opening a restaurant, which is why he requested the award in a lump sum. In response to questions from the commissioner, Hutson admitted he had never previously run a restaurant and acknowledged that doing so would require him to stand at the register and in the kitchen as well as sit for periods of time writing menus and paying bills. Nevertheless, Hutson stated he believed he could run a restaurant and although he could not respond with any specificity when asked how much money he expected to make, he informed the commissioner, "It depends on how many people I get coming in there. My food's good."

The single commissioner found Hutson sustained a 30% loss of use to his back under section 42–9–30. He also noted that Hutson suffered radicular symptoms which affected the function of his right leg, but did not award any benefits. With regard to the wage loss claim under section 42–9–20, the commissioner denied recovery finding "that claimant understands what it entails to run a restaurant and he believes he can do this type of work." He concluded that because Hutson could not testify as to how much he would make as a restaurateur, there was no way to determine if he would suffer any loss of earning capacity. However, the commissioner went on to express some doubt about the viability of Hutson's plan stating that "[Hutson] was given ample opportunity during my questioning to qualify or moderate his testimony concerning his perceived ability to run a restaurant. Frankly, his confidence runs contrary to the greater weight of the evidence in the record." The commissioner further noted that "[h]ad [Hutson not made these statements], [he] would have found him to be Permanently and Totally disabled under 42–9–10."

The full commission and circuit court affirmed. Hutson then appealed to the court of appeals arguing the finding that

he was capable of running a restaurant was not supported by substantial evidence, recovery should not have been limited to an award for his back because the commissioner found his back injury affected his legs, and the case should have been remanded for further fact findings on the wage loss and loss of use of his back, leg, or whole person. The court of appeals agreed that the full commission should have considered whether his back injury combined with the damage to his leg entitled him to greater benefits under section 42–9–30 and remanded for reconsideration of this issue. *Hutson v. State Ports Auth.*, 390 S.C. 108, 116, 118, 700 S.E.2d 462, 467, 468 (Ct.App.2010). However, it found substantial evidence to support the full commission's finding that Hutson did not prove a wage loss. *Id.* at 114, 700 S.E.2d at 466. We granted certiorari solely to consider this second issue.[1]

## LAW/ANALYSIS

■  Hutson argues no substantial evidence exists to support the commissioner's conclusion that he is not entitled to wage loss benefits under section 42–9–20. Because we find the only evidence supporting the full commission's decision is pure speculation and conjecture, we agree.

■  When a worker covered by the Workers' Compensation Act (Act) is injured, he can recover under the "general disability" statutes or the "scheduled loss" statutes. S.C.Code Ann. §§ 42–9–10 to –30. The general disability statutes offer compensation for total and partial disability, including a provision for wage loss benefits. The wage loss benefits statute provides:

Except as otherwise provided in § 42–9–30, when the incapacity for work resulting from the injury is partial, the employer shall pay, or cause to be paid, as provided in this chapter, to the injured employee during such disability a weekly compensation equal to sixty-six and two-thirds percent of the difference between his average weekly wages before the injury and the average weekly wages which he is

---

1. No writ was sought with respect to the court of appeals' decision to remand for consideration of his leg injuries, and Hutson stated in oral argument before this Court that he was no longer pursuing any claim for total and permanent disability.

able to earn thereafter, but not more than the average weekly wage in this State for the preceding fiscal year. *Id.* § 42–9–20. "It is well-settled that an award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing." *Skinner v. Westinghouse Elec. Corp.,* 394 S.C. 428, 432, 716 S.E.2d 443, 445–46 (2011) (quoting *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990)).

The Administrative Procedures Act governs our review of the full commission's decision. *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981). Under this standard, we can reverse or modify the decision only if the claimant's substantial rights have been prejudiced because the decision is affected by an error of law or is clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. S.C.Code Ann. § 1–23–380(A)(5) (Supp. 2011). "Substantial evidence is not a mere scintilla of evidence nor evidence viewed from one side, but such evidence, when the whole record is considered, as would allow reasonable minds to reach the conclusion the Full Commission reached." *Shealy v. Aiken Cnty.,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000).

We begin our analysis by repeating two principles which form the lens through which we view this case. First is the guiding principle undergirding our workers' compensation system that the Act is to be liberally construed in favor of the claimant. *Carter v. Penney Tire & Recapping Co.,* 261 S.C. 341, 349, 200 S.E.2d 64, 67 (1973); *Hall v. Desert Aire, Inc.,* 376 S.C. 338, 350, 656 S.E.2d 753, 759 (Ct.App.2007). The second is the equally compelling evidentiary principle that an award may not rest upon surmise, conjecture, or speculation. *Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999). Instead, "[an award] must be founded on evidence of sufficient substance to afford a reasonable basis for it." *Wynn v. People's Natural Gas Co. of S. C.,* 238 S.C. 1, 12, 118 S.E.2d 812, 818 (1961).

It is undisputed that Hutson's admitted injury prevents him from continuing in his life's occupation as a crane operator. The sole question before us therefore is whether his injury will

also prevent him from earning the same wages in another job. In concluding that it will not, the single commissioner, as affirmed by the full commission, focused entirely on Hutson's own wholly speculative testimony regarding the restaurant. When Hutson's counsel asked him about his future plans, Hutson responded simply that he was "looking into maybe a restaurant business." However, the sole purpose for this testimony was to support Hutson's request that his award be paid to him in a lump sum, which is evident from the following colloquy between counsel and Hutson:

Q. And do you need that money paid in a lump sum to try to do something in the future as far as maybe starting up a business or getting invested or do something?

A. Yes, sir.

Under further questioning by Respondents' counsel and the single commissioner himself, it became clear that although Hutson had family members in the restaurant business and had taken a course in culinary arts, his primary reason for believing he could run a restaurant was that he liked to cook. The *only* evidence concerning what Hutson might earn as a restaurateur came during the single commissioner's questioning when the following colloquy occurred:

Q. You say you can run a restaurant. How much money do you expect you can make?

A. It depends on how many people I get coming in there. My food's good.

Thus, despite Hutson's confidence in his own abilities, the record is clear that Hutson had no experience running a restaurant or an understanding of what doing so entails. In fact, as noted above, the revealingly candid passage from the single commissioner's written order demonstrates the single commissioner recognized the speculative nature of Hutson's aspirations. Yet he, and ultimately the full commission, held Hutson's inability to testify as to what he could earn from this proposed venture meant Hutson could not show a loss of earning capacity. To use such unsupported and wildly optimistic goals which are in direct conflict with the only concrete evidence in the record would turn the Act on its head and violate the stated policy behind it. Worse, it would punish an employee for merely exploring the chance of overcoming an

unanticipated injury by exploring other possible career options. The court of appeals and the circuit court then compounded the commission's error by holding Hutson's testimony constituted not just evidence, but substantial evidence, that he had not suffered a wage loss.[2]

Respondents rely on *Sellers v. Pinedale Residential Center,* 350 S.C. 183, 564 S.E.2d 694 (Ct.App.2002), to support their assertion that "the Commission was correct in considering the future earnings of [Hutson] based on [Hutson's] own testimony." Respondents' reliance on *Sellers* is misplaced. In *Sellers,* the court of appeals affirmed the commission's decision to adjust an injured high-school student and part-time employee's average weekly wage and compensation rate to reflect his probable future wages in a career as an electrician, a job he did not hold at the time of his injury. *Id.* at 191, 564 S.E.2d at 699. The commission's decision was based on concrete facts that illustrated the employee's career goals were well-founded because of his "interest, aptitude, and ability to become an electrician." [3] *Id.* In addition, the commission based its decision on the vocational expert's testimony, and Sellers offered no evidence to the contrary. *Id.* at 191–92, 564 S.E.2d at 699. *Sellers* simply does not stand for the proposition that a claimant's testimony regarding his future earnings is always sufficient. Here, the testimony relied upon by the court of appeals is not only *contrary* to the vocational expert's testimony but rests solely on Huston's speculative goals. Thus, there is no evidence in the record supporting the commissioner's order, and *Sellers* has no bearing on the case before us.

In sum, the full commission's conclusion is based on rank speculation and cannot now be used as the basis for denying

---

2. Although the court of appeals also noted that Hutson's physicians did opine he could return to light duty work, *Hutson,* 390 S.C. at 115, 700 S.E.2d at 466, the physicians presented no evidence regarding his earning capabilities.

3. In so concluding, the commissioner weighed the fact that Sellers had joined his father, an electrician, at work on a number of occasions, since he was twelve years-old as well as the testimony of the employer of Sellers' father that "Sellers was very energetic.... He had a very determined approach that he wanted to learn the electrical trade, and ... do the same thing his dad was doing." *Sellers,* 350 S.C. at 192, 564 S.E.2d at 699.

Hutson's claim for lost wages. *Holland v. Ga. Hardwood Lumber Co.*, 214 S.C. 195, 205, 51 S.E.2d 744, 749 (1949) ("The existence of a fact or facts cannot rest in speculation, surmise, or conjecture."); *see also Wynn*, 238 S.C. at 12–13, 118 S.E.2d at 818 (reversing commission's finding where the claimant's bare assertion that he could not work was not corroborated by his physicians). Hutson's desire to continue to have a productive work life is commendable and is, quite frankly, a refreshing change from much of the testimony normally contained in workers' compensation matters coming before this Court. However, what is abundantly clear from Hutson's testimony is that he never worked in a restaurant in his life, much less operated one, and he clearly had no idea what income he might realize from such a venture. Because his testimony was based on speculation, surmise, and conjecture, it cannot support the commission's decision that he did not sustain a wage loss. We therefore reverse the court of appeals.

## CONCLUSION

Based on the above, we reverse the court of appeals' decision that Hutson did not show a wage loss within the meaning of section 42–9–20, and therefore remand this matter to the commission. The only evidence in the record bearing on Hutson's future earning capabilities is from the vocational expert who offered uncontradicted testimony that Hutson's present earning potential is approximately $14,000 per year. However, this figure is what Hutson could expect to earn without successful completion of a vocational rehabilitation plan. Because the record does not reveal what Hutson might earn if he were to complete this plan, we remand for the commission to determine his earning capabilities upon successful completion, if possible. The commission will then enter an award as necessary under section 42–9–20.

BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. While it may seem a harsh result to deny petitioner partial disability under S.C.Code Ann. § 42–9–20 (1985), I believe there is substantial evidence to uphold the finding that he did not meet his burden of proof. I would therefore affirm.

I begin by noting that petitioner bears the burden of proving wage loss under § 42–9–20. *E.g. Bass v. Kenco Group*, 366 S.C. 450, 622 S.E.2d 577 (2005). Petitioner was interviewed by a vocational specialist in September 2005, and she issued a written report in October 2005. In this report, the expert noted petitioner had a "high school level of education with some course work at Trident Tech." She opined that if petitioner were to obtain an above minimum wage job, he would require "a [sic] myriad of services to include career counseling . . . occupational skill training in either a classroom or the job setting, and selected job placement. . . ." There is no evidence in the record that petitioner discussed his interest in the hospitality industry with this expert. Thus, her report does not address the viability of petitioner's subsequent decision to enter the restaurant business.

At the hearing in August 2006, petitioner introduced the vocational specialist's report. He also took the stand and testified to his intent to enter the restaurant business in the near future. The single commissioner found the following factual findings regarding petitioner's wage loss claim:

Claimant has failed to prove that he suffered a loss of earning capacity under § 42–9–20. Claimant testified that at the **time of the hearing** that [sic] he is planning on getting into the restaurant business. Claimant testified that he has family members in the restaurant business and he is aware of what it entails to work in the business. Claimant testified that he is able to manage or supervise a restaurant. Claimant testified that he would like to have a restaurant that seats 120 people. **Claimant was unable to testify as to what his productive earnings would be in the restaurant business, therefore, there is absolutely no way for this Commissioner to determine any loss of earning capacity** based on the testimony of the Claimant. Furthermore, when asked by this Commissioner, Claimant

testified that he understood that even if he owned a restaurant he would still have to figure out the menu, write the checks, pay the bills and stand if he worked the registers. In addition, he admitted that he would have to stand to help in the kitchen as well. Based on Claimant's testimony I find that claimant understands what it entails to run a restaurant and he believes that he can do this type of work.

(Emphasis supplied.)

The single commissioner found that, by his own testimony concerning his intention to run a restaurant, petitioner failed to prove a loss of earning capacity. The question of proof of a loss of earning ability is one of substantial evidence. *E.g. Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 393 S.E.2d 172 (1990). Substantial evidence exists to support an administrative factual finding if, viewing the record as a whole, reasonable minds could reach the same conclusion. *E.g., Lark v. Bi–Lo,* 276 S.C. 130, 276 S.E.2d 304 (1981). Evidence of probable future earning capacity is not unduly speculative where supported by the evidence such as the employee's own testimony. *See Sellers v. Pinedale Residential Center,* 350 S.C. 183, 564 S.E.2d 694 (Ct.App.2002) (substantial evidence of future earning capacity to determine average weekly wages). Further, the fact that one could draw inconsistent conclusions from the evidence does not mean the administrative decision is not supported by substantial evidence. *E.g., S.C. Coastal Conser. v. League v. Dep't of Health and Envtl. Control,* 363 S.C. 67, 610 S.E.2d 482 (2005). Finally, neither the commission nor a court is required to accept expert evidence over lay testimony. *E.g., Tiller v. Nat'l Health Care Ctr. of Sumter,* 334 S.C. 333, 513 S.E.2d 843 (1999).

Here, the Full Commission, circuit court, and Court of Appeals all found substantial evidence supported the single commissioner's finding that petitioner did not meet his burden of proving wage loss. Given petitioner's extensive testimony regarding his intent to operate or work in a restaurant, I agree that substantial evidence supports the finding that petitioner has future earning capacity. I also agree that petitioner's failure to present any evidence of the income he can be expected to earn as a result of his change in profession supports the Full Commission's finding, affirmed by the circuit

court and the Court of Appeals, that petitioner did not meet his burden of proof under § 42–9–20 to prove wage loss.

I would affirm.