# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Kenneth L. Barr, Claimant, Appellant,

v.

Darlington County School District, Employer, and S.C. School Boards Insurance Trust, Carrier, Respondents.

Appellate Case No. 2018-001237

———————

Appeal From The Workers' Compensation Commission

———————

Opinion No. 5815
Heard February 2, 2021 – Filed April 7, 2021

———————

**AFFIRMED**

———————

Preston F. McDaniel, of McDaniel Law Firm, of Columbia; and Gerald Malloy, of Malloy Law Firm, of Hartsville, both for Appellant.

Kirsten Leslie Barr, of Trask & Howell, LLC, of Mount Pleasant, for Respondents.

———————

**KONDUROS, J.:** In this workers' compensation action, Kenneth L. Barr, Employee, appeals the decision of the Appellate Panel of the South Carolina Workers' Compensation Commission denying his claim for medical and compensation benefits for alleged injuries he argues resulted from exposure to volatile organic compounds (VOCs) in paints he used while working for the Darlington County School District, Employer. We affirm.

**FACTS/PROCEDURAL HISTORY**

Employee began working as a painter for Employer on May 27, 2009. Before this employment, Employee worked as a commercial painter for a nuclear plant and as a house painter on a self-employed basis, and had other nonpainting jobs. Employee painted both inside and outside Employer's school buildings with a schedule consisting of five eight-hour days during the school year and four ten-hour days in the summer.

Approximately one year after Employee began work for Employer, in June of 2010, he reported to his primary care physician, Dr. Raymond Chapman, he had experienced headaches for the past four weeks. After a CT scan did not reveal an abnormality, Dr. Chapman treated Employee over the course of several years as Employee continued to report headaches, as well as anxiety and other ailments. Dr. Chapman noted Employee was "[a] very complicated patient with numerous medical issues."

Employee reported a specific incident during his employment that occurred on March 16, 2015, in which he experienced a severe headache, dizziness, disorientation, and left hand pain. The incident occurred when Employee had not painted yet that day, but was driving to a store to purchase supplies. He testified he became disoriented, and after returning his work vehicle, his wife drove him to the emergency room and he was admitted to the hospital. A CT scan showed no evidence of an abnormality.

Employee saw various specialists and reported chronic headaches and other health concerns. Employee sought treatment with Dr. Marshall White, a private practice neurologist, in late 2012, for severe headache and back pain. About two years later, Employee again sought treatment from Dr. White, reporting "severe headache, memory loss, fatigue, confusion, and disorientation." On May 21, 2015, Dr. White diagnosed Employee with brain damage related to his exposure to VOCs in the paints he used. In his report dated October 21, 2015, Dr. White stated Employee "suffered an encephalopathic condition which has led to severe permanent brain damage," and Employee "is totally and permanently disabled and unsuited for any rehabilitation that would enable him to re-enter the workforce."

Employer denied Employee had any injury to his brain or nervous system, denied Employee's psychological issues were related to his employment, and stated his working conditions caused neither repetitive nor traumatic injury and that Employee had not shown the required elements of an occupational disease. Employer noted Employee admitted he worked in a ventilated area, used a

respirator, and painted with a brush and roller, not a sprayer. Employer asserted Dr. White's opinion of brain damage was unsupported by evidence and speculative. Employer noted Dr. Nicholas Lind, who performed neuropsychological testing on Employee, found no evidence of memory or processing speed deficits. Employer asserted Employee's headaches predated his employment with Employer as did his complaints of fatigue and other psychological issues.

Dr. Paul Pritchard, a neurologist at the Medical University of South Carolina, performed an independent medical examination of Employee on February 2, 2016, and reviewed Employee's medical records on behalf of Employer. Dr. Pritchard did not find evidence of encephalopathy in Employee and stated Employee's neurological exam was normal: "the neurological exam today was normal, including normal scores for orientation, memory, calculations, and language function . . . . [Employee] did not have findings to support a diagnosis of encephalopathy on today's exam."

The records of Dr. William Woodberry, who saw Employee in 2005, approximately four years before Employee began working for Employer, include the following: "[Employee] has had intermittent vertigo for the past four years. . . . He had the sudden onset of dizziness and feeling of imbalance, trouble walking because of that."

Dr. Roland Skinner, a neurologist, opined, in part, that Employee's headaches were tension headaches and noted: "I think a good bit of his problem may be analgesic rebound. He needs to completely stop intermittent Tylenol, Ibuprofen and Goody Powders."

Dr. Joseph Healy, another physician who examined Employee, opined Employee's exposure to VOCs in paint did impact his health, but as one of a number of other factors:

> [M]y impression with this guy is that he is a heavy smoker, but to compound his pulmonary problems is his exposure to the VOCs and so he has two pulmonary insults. He has an abnormal blood gas which is essentially his oxygen level was just probably a little bit low, but his carbon dioxide level is too high, so he's retaining carbon dioxide, which you know, causes the brain to not totally function properly. It's a metabolic problem. But I do that think his exposure to the VOCs

combined with his [metabolic problem] has caused him
to have pulmonary problems which lead [to] other
problems.

Dr. Healy also performed a sleep study in April 2016, which revealed "severe obstructive sleep apnea syndrome." Dr. Healy testified: "[H]e had severe sleep apnea,[1] and so, I mean, in anybody that has headaches, you got to correct your sleep, you got to correct breathing and then, too, it showed that he was a kicker."[2]

In addition, Dr. White, Employee's neurologist, acknowledged in his deposition in 2016 that evidence of brain damage is difficult to show: "Not everything that we can evaluate or see in neurology can be assessed in the living patient." Dr. White further provided: "And since so many people are wanting objective evidence of problems where there's scant objective evidence, unfortunately at this time neuropsych[ological] testing is the best objective measure we have for evaluating patients with encephalopathic conditions." Dr. White also testified he did not know anything about the environment Employee worked in or the personal protective equipment he used. Dr. White noted his opinion was: "[b]ased on [Employee's] history and the fact that I feel that the constellation of symptoms is most consistent with a toxic exposure. . . . So I'm still waiting on the neuropsychological testing, which I think is going to give us a lot more information."

On June 19, 2015, Employee filed a claim with the Commission for benefits and medical treatment, asserting a date of injury of May 21, 2015. On October 1, 2015, Employee filed a second claim and requested a hearing before a single commissioner. In a third Form 50, filed in May 2016, Employee requested a hearing and sought benefits and medical treatment. After a hearing on August 31, 2016, the single commissioner denied medical and compensation benefits, finding the weight of the evidence did not support Employee's claims. On June 5, 2018, the Appellate Panel affirmed the single commissioner's order, adopting verbatim the single commissioner's findings of fact and conclusions of law. This appeal followed.

---

[1] Dr. Healy, in his deposition, explained sleep apnea: "what that means is [] that you have disruption at night in your breathing which typically is obstructive. You drop your oxygen levels which causes apneic episodes; you stop breathing."

[2] We interpret this as a possible reference to restless leg syndrome.

## STANDARD OF REVIEW

"The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence." *Hall v. United Rentals, Inc.*, 371 S.C. 69, 79, 636 S.E.2d 876, 882 (Ct. App. 2006).

> The Administrative Procedures Act (APA) provides a reviewing court "may reverse or modify the decision [of the Commission] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . affected by other error of law [or] clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record."

*Frampton v. SCDNR*, 432 S.C. 247, 256, 851 S.E.2d 714, 719 (Ct. App. 2020) (quoting S.C. Code Ann. § 1-23-380(5)(d), (e) (Supp. 2020)), cert. pending.

> Our supreme court has defined substantial evidence as "not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but . . . evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached or must have reached in order to justify its action."

*Id.* at 257, 851 S.E.2d at 719 (quoting *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 135, 276 S.E.2d 304, 306 (1981)).

> The final determination of witness credibility and the weight to be accorded evidence is reserved to the appellate panel. The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. Where there are conflicts in the evidence over a factual issue, the findings of the appellate panel are conclusive.

*Bass v. Kenco Grp.*, 366 S.C. 450, 458, 622 S.E.2d 577, 581 (Ct. App. 2005) (internal citations omitted).

# LAW/ANALYSIS

## I. Abandonment of Issues on Appeal

As a threshold issue, Employer contends Employee abandoned two arguments on appeal: (1) his claims for injuries other than headaches—encephalopathy, memory loss, fatigue, confusion, and injuries to the brain and nervous system—and (2) assertions of error regarding the Commission's findings pursuant to sections 42-1-160, 42-11-10, and 42-1-172 of the South Carolina Code (2015). We disagree.

"Only issues raised and ruled upon by the commission are cognizable on appeal." *Smith v. NCCI, Inc.*, 319 S.C. 236, 256, 631 S.E.2d 268, 279 (Ct. App. 20016). "An unappealed ruling is the law of the case and requires affirmance." *Shirley's Iron Works v. City of Union*, 403 S.C. 560, 573, 743 S.E.2d 778, 785 (2013).

While we recognize Employee referenced headaches predominately in his arguments to the Appellate Panel and to this court, we disagree Employee limited his claims to headaches only. We find the testimony offered to the single commissioner included medical testimony related to all his claims of injury, and Employee thereafter requested the Appellate Panel review all of the single commissioner's findings and conclusions. We take note of the introductory statement in the June 5, 2018 decision of the Appellate Panel indicating Employee abandoned his claims for encephalopathy, brain damage, memory loss, fatigue, confusion, and injuries to the central nervous system and that Employee sought compensation and treatment for headaches. However, the findings of fact and conclusions of law of the Appellate Panel's order encompass and address the broader scope of Employee's allegations and do not indicate Employee abandoned certain claims.

Employer also contends Employee abandoned his arguments on appeal regarding the Appellate Panel's findings pursuant to sections 42-1-160 (injury by accident), 42-11-10 (occupational disease), and 42-1-172 (repetitive trauma injury), and therefore, these findings are the law of the case. The Appellate Panel concluded Employee was not entitled to benefits because "the greater weight of the evidence" indicated Employee did not suffer a work-related accident, his alleged injures "d[id] not qualify as an 'occupational disease,'" and, his injuries "were not caused by a compensable 'repetitive trauma.'" In these findings, the Appellate Panel cited to the significant weight of evidence, specifically from Dr. Pritchard, Dr. Healy, Dr. Wagner, Dr. Lind, and Dr. Waid. On appeal to this court, Employee argues, to

the contrary, substantial evidence did prove Employee was entitled to benefits for a work-related injury.

We find Employee sufficiently raised his issues on appeal, including symptoms other than headaches, as well as his contention the evidence supported a compensable work-related injury, and therefore, we will address the merits of Employee's issues on appeal.

## II.    Substantial Evidence

Employee maintains that the Record contains substantial evidence to prove his injuries were the result of his exposure to VOCs in the paints he used during his employment with Employer and it was error for the Commission to deny him benefits based on this substantial evidence.  Employee asserts he was only required to prove by a preponderance of the evidence he was entitled to benefits, citing *Hutson v. South Carolina State Ports Authority*, 399 S.C. 381, 732 S.E.2d 500 (2012).  Employer contends substantial evidence supported the Appellate Panel's finding Employee's headaches were not caused by his employment with Employer, citing multiple medical opinions in evidence.

We begin with the principle noted in *Hutson*: "an award may not rest upon surmise, conjecture, or speculation.  Instead, '[an award] must be founded on evidence of sufficient substance to afford a reasonable basis for it.'" *Hutson*, 399 S.C. 381, 387, 732 S.E.2d 500, 503 (alteration by court) (citations omitted) (quoting *Wynn v. People's Nat. Gas Co. of S.C.*, 238 S.C. 1, 12, 118 S.E.2d 812, 818 (1961)).  Additionally, "[t]he findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. It is not within our province to reverse findings of the appellate panel which are supported by substantial evidence." *Gadson v. Mikasa Corp.*, 368 S.C. 214, 222, 628 S.E.2d 262, 266 (Ct. App. 2006) (citation omitted).

The opinions of multiple medical professionals who examined and reviewed the records of Employee, including Dr. Pritchard, Dr. Healy, Dr. Wagner, Dr. Lind, and Dr. Waid, do not support Employee's claim he was injured from exposure to VOCs in paint while engaged in work for Employer.  Further, the Appellate Panel gave little weight to the opinions of Dr. White "as they have no objective basis and they are otherwise contradicted by the overwhelming weight of the credible evidence in the record, including the opinions of the other neurologists who evaluated [Employee] and found him to have no evidence of any brain or other neurologic injury."

Dr. White opined VOCs caused Employee's chronic headaches and deficits and that Dr. Lind's neuropsychological testing confirmed his opinion. However, Dr. White also admitted an occupational medicine physician or a toxicologist would be better able to provide such a diagnosis and he could not differentiate between Employee's exposure to VOCs working for Employer and Employee's exposure from other painting work. Further, neuropsychological testing revealed contradictory information, including that Employee did not suffer from any memory deficits.

Thus, the Record contains substantial evidence to support the decision of the Appellate Panel.

> "Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the [Appellate Panel] reached." *Lockridge v. Santens of Am., Inc.*, 344 S.C. 511, 515, 544 S.E.2d 842, 844 (Ct. App. 2001). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Lee v. Harborside Café*, 350 S.C. 74, 78, 564 S.E.2d 354, 356 (Ct. App. 2002).

*Turner v. SCDHEC*, 377 S.C. 540, 545-46, 661 S.E.2d 118, 121 (Ct. App. 2008).

We recognize finding the cause of chronic headaches is difficult, and it is unfortunate that Employee has suffered for so long. However, substantial evidence supports the decision of the Appellate Panel.

## III.   Cross-Examination of Witnesses

Employee contends the Commission erred as a matter of law in denying his due process right of cross-examination because the single commissioner allowed into evidence the reports of Dr. Pritchard, Dr. Wagner, Dr. Waid, and Dr. Eagerton. Employee asserts because the Commission did not issue subpoenas for these witnesses to testify at the hearing and did not exclude the evidence, a violation of Regulation 67-612(F) of the South Carolina Code (2012) occurred and Employee was denied the right to cross-examine these witnesses. Employee also states he received the APA submissions of Employer containing the reports on February 16, 2016, less than fifteen days before the hearing before the single commissioner, first

scheduled for February 24, 2016, implying he was prejudiced by this timing.  We disagree.

Section 1-23-330 of the South Carolina Code (2005), states: "[a]ny party may conduct cross-examination."  Regulation 67-611(B)(1) of the South Carolina Code (Supp. 2020) provides:

> [t]he moving party must provide the Form 58 and proof of service to the opposing party at least fifteen days before a scheduled hearing.  The Form 58 must . . . set forth the names and addresses of persons known to the parties or counsel to be witnesses concerning the facts of the case and indicate whether or not written or recorded statements . . . have been taken from any witness . . . .

Regulation 67-612(B) of the South Carolina Code (2012) provides:

> [a] written expert's report to be admitted as evidence at the hearing must be provided to the opposing party as follows:
>
> (1) The moving party must provide the report to the opposing party at least fifteen days before the scheduled hearing.
>
> (2) The non-moving party must provide to the moving party any report not provided by the moving party at least ten days before the scheduled hearing.

Further, "[a]ny report submitted to the opposing party . . . shall be submitted as an APA exhibit at the hearing."  Regulation 67-612(D), S.C. Code.  The regulation also establishes "[i]f the parties consent to the admission of a report, then the Hearing Commissioner shall receive such report into evidence without regard as to whether the parties have complied with this section."  Regulation 67-612(F).

In *Gadson*, this court ruled that a doctor's report was admissible even though the opposing party chose not to subpoena the witness to appear at the hearing, nor to depose the witness:

Hutchinson's report was properly filed as an APA submission and timely served on Mikasa. The regulations allow for APA submissions. Gadson complied with the regulations by giving notice. Further, it was clear from the APA submission and the Brief that the vocational expert would not be testifying live but a report would be submitted in lieu of live testimony. After the service of the Brief on Mikasa, defense counsel made no attempt to depose Hutchinson so as to challenge her credentials or expertise nor did he attempt to subpoena her to the hearing or to subpoena any additional qualifications he may have desired. Mikasa objected to the report at the hearing but made no request to depose Hutchinson at a later date. Moreover, the [APA] allows for submission of such a report. Thus, Hutchinson's report was admissible under the APA and Regulations 67-611 and 67-612.

368 S.C. 214, 227, 628 S.E.2d 262, 269.

We reject Employee's position he was denied due process because the Commission did not subpoena certain witnesses to the hearing before the single commissioner in violation of the regulations. Employee had the opportunity to cross-examine witnesses, either by subpoena or deposition. Furthermore, despite Employee's concerns he did not receive Employer's APA submissions until February 16, 2016, for the scheduled February 24, 2016 hearing, the hearing was rescheduled and did not take place until August 31, 2016, seven months later. Employee had ample time to depose witnesses or subpoena witnesses to the hearing. Employee failed to take advantage of his right to cross-examine these witnesses whose reports were included in the APA submissions of Employer. Accordingly, the Commission did not err in allowing the introduction of the written reports of Dr. Pritchard, Dr. Wagner, Dr. Waid, and Dr. Eagerton.

## IV. Findings of Fact

Employee contends the Commission erred because the single commissioner failed to make a finding of fact on an essential issue—whether Employee was entitled to temporary total disability benefits and medical care until he reached maximum medical improvement (MMI). Employee asserts Dr. Healy opined Employee had not reached MMI and therefore Employee sought temporary total disability

benefits and medical care until he reached MMI.  Employee faults Employer's drafting of a second proposed order which included a finding of fact on this issue, but asserts this issue was not addressed by the single commissioner at the hearing. We disagree.

Employee cites to *Drake v. Raybestos-Manhattan, Inc.*, 241 S.C. 116, 127 S.E.2d 288 (1962), in support of his argument.  The *Drake* decision held in part:

> The duty to determine the factual issues is placed solely on the Commission, and neither this Court, nor the Circuit Court, has authority to determine factual issues, except in jurisdictional matters. This duty on the part of the Commission requires that, not only must findings of fact be made upon the essential factual issues, but that they be sufficiently definite and detailed to enable the appellate court to properly determine whether the findings of fact are supported by the evidence and whether the law has been properly applied to those findings.

*Id.* at 123, 127 S.E.2d at 292.

"The Appellate Panel's findings must be sufficiently detailed to enable the reviewing court to determine whether the findings are supported by the evidence." *Turner*, 377 S.C. at 544, 661 S.E.2d at 120.

The decision of the single commissioner did specifically include a finding Employee was not entitled to temporary or permanent disability benefits, nor medical care or treatment, because Employee did not suffer a workplace incident causally-related to his employment based on the greater weight of the evidence. The Appellate Panel affirmed the single commissioner and repeated in its conclusions of law the same findings: "[Employee] is not entitled to any medical benefits, as the greater weight of the evidence indicates that the claimant does not require any medical care or treatment as a result of any alleged workplace accident or exposure and any alleged period of disability is otherwise not causally-related to his employment."  Furthermore, the Appellate Panel determined Employee "is not entitled to any temporary or permanent disability benefits, as the greater weight of the evidence indicates that [Employee] does not have any loss of wage-earning capacity as a result of any alleged workplace accident or exposure . . . ."  The Appellate Panel expressly stated its findings were based upon Dr. Healy's

deposition testimony which established he "believed that alleged VOC exposure was merely 'contributory' and he could not state with any certainty what was causing the underlying pulmonary problems he felt were causing [Employee's] headaches and fatigue and would, instead, defer to a pulmonologist." Furthermore, the Appellate Panel noted "Dr. Healy testified that he could not find any neurological cause for [Employee's] symptoms," and instead referred Employee to a pulmonologist, a cardiologist and an ophthalmologist.

Accordingly, the Appellate Panel did not err in making findings of fact and conclusions of law regarding Employee's claims, and they are "sufficiently definite and detailed to enable the appellate court to properly determine whether the findings of fact are supported by the evidence," as required under the standard set forth in *Drake*.

## V. Proper Notice of Evidence

Employee asserts the Commission erred in considering evidence from Dr. Pritchard because Employee was not given proper notice of Employer's communication with Dr. Pritchard in violation of section 42-15-95 of the South Carolina Code (2015). Employer asserts Employer communicated with Dr. Pritchard before Employee was notified and Employer failed to provide Employee with the records Employer gave to Dr. Pritchard in accordance with section 42-15-95. More specifically, Employee contends Employer communicated with Dr. Pritchard on December 8, 2015, and sent him voluminous records in advance of his examination of Employee. Employee asserts he had no knowledge of the communication until January 19, 2016, and he was not given a copy of the records provided to Dr. Pritchard until two days after Dr. Pritchard examined Employee on February 2, 2016. Employee asserts that even though he participated in Dr. Pritchard's deposition, Employer violated section 42-15-95, and thus Dr. Pritchard's report and deposition should not have been admitted into evidence. We disagree.

Section 42-15-95(B) states an employee "must be"

> (1) notified by the employer, carrier, or its representative requesting the discussion or communication with the health care provider in a timely fashion, in writing or orally, of the discussion or communication and may attend and participate. This notification must occur prior to the actual discussion or communication if the health

     care provider knows the discussion or communication will occur in the near future;

     (2) advised by the employer, carrier, or its representative requesting the discussion or communication with the health care provider of the nature of the discussion or communication prior to the discussion or communication; and

     (3) provided with a copy of the written questions at the same time the questions are submitted to the health care provider. The employee also must be provided with a copy of the response by the health care provider.

We find the substantial rights of Employee were not prejudiced by Employer's actions and find no error by the Commission in admitting Dr. Pritchard's report and deposition. The Commission is imbued with the authority to consider all medical evidence and give it the weight it deems appropriate. While we acknowledge Employer failed to communicate with Employee pursuant to section 42-15-95(B), Employee agreed to the examination by Dr. Pritchard, participated in the deposition of Dr. Pritchard, and received the report of Dr. Pritchard seven months before the rescheduled hearing date. We find the substantial rights of Employee were not prejudiced. Therefore, we decline to reverse or modify the Commission's decision. *See* section 1-23-380(5) of the S.C. Code (Supp. 2020) stating this court "may reverse or modify the decision [of the Commission] if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . in violation of . . . statutory provisions").

## VI.    Medical Evaluation of Dr. Pritchard

Employee contends the single commissioner "erred by ordering [Employee] to attend the evaluation by Dr. Pritchard and then basing its decision on that evaluation" without showing there were no qualified physicians in the Darlington area, because section 42-15-80 of the South Carolina Code (2015) mandates the examination of a claimant must be "at reasonable times and places, by a qualified physician or surgeon." Employee also contends a series of events caused his requested hearing date to be continued several times, and because of this, "[the single commissioner] based his decision almost entirely on the opinions of Dr. Pritchard [and] Dr. Eagerton." We disagree.

Section 42-15-80(A) states: "After an injury and so long as he claims compensation, the employee, if so requested by his employer or ordered by the commission, shall submit himself to examination, at reasonable times and places, by a qualified physician or surgeon designated and paid by the employer or the commission."

Employer asserts Employee's arguments are moot because "[Employee] actually attended the appointment [with Dr. Pritchard]," and thus "his arguments regarding the propriety of the time and place of that appointment are now moot and of no consequence."

"The court does not concern itself with moot or speculative questions. An appellate court will not pass judgment on moot and academic questions; it will not adjudicate a matter when no actual controversy capable of specific relief exists." *Sloan v. Greenville County*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009).

In light of the fact Employee attended the examination with Dr. Pritchard, we find this issue is moot and the Commission did not err in considering the report and deposition of Dr. Pritchard. Employee was offered transportation to and from Charleston, and based on Dr. Pritchard's credentials as the Program Director for Neurology at the Medical University of South Carolina and his board certifications in both neurology and clinical neurophysiology, it was not unreasonable for Employee to have to travel from Florence to Charleston.

## VII. Reliance on the Opinion of Dr. Eagerton

Employee asserts the Appellate Panel erred in affirming the single commissioner's decision because the decision was based in part on the report of Dr. Eagerton, Ph.D., who is not a medical doctor. We disagree.

"The qualification of an expert witness and the admissibility of the expert's testimony are matters within the trial court's sound discretion." *Gadson*, 368 S.C. at 228, 628 S.E.2d at 269.

> The party offering the expert has the burden of showing the witness possesses the necessary learning, skill, or practical experience to enable the witness to give opinion testimony. Generally, however, defects in the amount and quality of the expert's education or experience go to

> the weight to be accorded the expert's testimony and not
> to its admissibility.

*Id.* at 228-29, 628 S.E.2d at 270 (internal citation omitted).

The introduction of Dr. Eagerton's report was appropriate and proper, and the single commissioner and Appellate Panel did not err in considering it. Beginning with Employee's own doctor, Dr. White, it became evident that to provide a diagnosis, Employee should be seen by a psychologist in an attempt to provide objective evidence, and Employee was examined by Dr. Lind, also a Ph.D. and not an M.D., whose report was considered by the Commission. We find no error in the Commission's consideration of the opinion of Dr. Eagerton.

## VIII. Findings of Fact Pursuant to Regulation 67-709(E)

Employee argues the Appellate Panel's order violated Regulation 67-709(E) of the South Carolina Code (2012). We disagree.

Regulation 67-709(E) provides:

> A Hearing Commissioner's finding of fact or conclusion
> of law subject to review by the Commission may be
> modified by the entry of the review panel's order making
> a new finding of fact, conclusion of law, or modifying
> the Hearing Commissioner's finding of fact or conclusion
> of law.
>
> (1) On review, a vote to affirm and modify is deemed a
> vote to affirm, or a vote to reverse and modify is
> deemed a vote to reverse.
>
> (2) The Commissioners, together, shall agree on a
> modification if any and record their findings of fact
> and conclusions of law on a vote sheet.

Regulation 67-709(E).

> A party who has exhausted all administrative remedies
> available within the agency and who is aggrieved by a
> final decision in a contested case is entitled to judicial

review pursuant to this article and Article 1. . . . (5) The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (a) in violation of constitutional or statutory provisions.

S.C. Code § 1-23-380 (Supp. 2020).

Employee argues the Appellate Panel "erred as a matter of law by issuing an order contrary to its decision." Employee argues, pursuant to regulation 67-709(E)(2), the Appellate Panel commissioners must record their vote as to any modifications of the single commissioner's findings and conclusions with a vote sheet. Employee asserts Employer prepared an order for the Appellate Panel that contained "factual and legal arguments and positions outside of the Commission's Decision which was simply to affirm." Employee appears to argue the Appellate Panel modified the single commissioner's findings of fact and conclusions of law, asserting such an order is not appropriate under regulation 67-709(E) without a vote sheet. Employee references summarily section 1-23-380, but does not indicate what if any modifications the Appellate Panel made to the single commissioner's order that would require a vote sheet.

We find no merit in Employee's argument. The Appellate Panel did not err in its June 5, 2018 order. The Appellate Panel expressly adopted "verbatim" the single commissioner's findings of fact and conclusions of law and affirmed the order of the single commissioner "in its entirety."

**CONCLUSION**

With genuine empathy for Employee who reports chronic headaches and other ailments, we affirm the decision of the Appellate Panel. We recognize this is a distressing case in which Employee is obviously in pain almost every day of his life; however, Employee did not prove he suffered a compensable, work-related injury at Employer's workplace. Employee did not prove an injury by accident, repetitive trauma, or occupational disease. The Appellate Panel's decision is supported by substantial evidence, and the Appellate Panel did not err as a matter of law regarding the introduction of evidence and handling of the procedural matters raised on appeal. Accordingly, the Appellate Panel's decision is

**AFFIRMED.**

**GEATHERS and MCDONALD, JJ., concur.**