716 S.E.2d 443

Thomas E. SKINNER, Employee, Respondent,

v.

WESTINGHOUSE ELECTRIC CORPORATION,
Employer, and Viacom, Carrier, Defendants,

Of Whom Westinghouse Electric Corporation is, Appellant.

No. 27037.

Supreme Court of South Carolina.

Heard May 25, 2011.

Decided Sept. 6, 2011.

Rehearing Denied Nov. 3, 2011.

R. Daniel Addison, Hedrick Gardner Kincheloe & Garofalo, L.L.P., of Columbia, Shay Dvoretzky and Craig I. Chosiad, of Jones Day, of Washington, D.C. for Appellant.

Jeffrey T. Eddy, of Charleston, for Respondent.

Justice HEARN.

Thomas Skinner received an award of benefits from the Workers' Compensation Commission for his asbestosis under the scheduled loss provisions of Section 42-9-30 of the South

Carolina Code (1976 & Supp.2009). Westinghouse Electric Corporation, Skinner's former employer, appeals that decision, arguing Skinner cannot recover for a scheduled loss and must proceed under the "general disability" statutes found in Sections 42–9–10 and 42–9–20 of the South Carolina Code (1976 & Supp.2009). We agree and reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Skinner began working for Westinghouse in 1968 and spent nearly fifteen years performing several different jobs in its Hampton, South Carolina plant. During the course of his employment, Skinner was regularly exposed to and breathed in asbestos dust contained in the insulation products produced at the plant as well as other toxic chemicals. In addition to his work with Westinghouse, Skinner joined the South Carolina Army National Guard as a reservist in 1969, attending one drill weekend a month and two drill weeks in the summer each year. Furthermore, he worked in the "property book" section of the National Guard, keeping accounting records of government-owned property.

In 1983, Skinner left Westinghouse on his own accord, not because of any condition, medical or otherwise, and began working full-time with the National Guard. His salary with the National Guard was over $44,000 per year, which was more than he was making at Westinghouse. He held that position until 1990, when he became a unit administrator for the Bamberg unit. As of 2005, he was still working full-time with the National Guard as an administrator for the Hampton unit.[1]

Skinner began having noticeable breathing problems while he was employed at Westinghouse. His breathing problems became more pronounced in the early 1990s, when he was working full-time with the National Guard. At that time, an army doctor diagnosed him with chronic obstructive pulmonary disease (COPD). Skinner continued to have breathing problems, and a pulmonary function test performed in 1998 showed a worsening of his lung function. Dr. Cary E. Fecht-

---

[1]. Under the National Guard's rules, Skinner would reach his mandatory retirement age in September 2006. We assume that he retired as planned at that time.

er, a board-certified pulmonary and critical care medicine specialist, evaluated Skinner in 2003 and diagnosed him with asbestosis, occupational bronchitis, severe sleep apnea, and sinusitis. Additionally, medical records for the hospital where Skinner received his general medical care stated he had COPD and asbestosis in both lungs.

Skinner filed a claim against Westinghouse with the South Carolina Workers' Compensation Commission in 2004, alleging he suffered an accidental injury to his lungs and whole body in 2003, caused by chronic inhalation of asbestos fibers, chemical fumes, and other injurious airborne contaminants. Skinner claimed this injury led to partial general disability and partial specific disability. Although Skinner was the only witness to testify at the hearing, the parties submitted the depositions of several doctors, including Dr. Fechter who claimed Skinner had a combined impairment of 64% of the whole person.

The Commissioner found Skinner suffered from an occupational disease and an injury by accident, was partially disabled, and was able to recover under section 42–9–30. Accordingly, the Commissioner awarded Skinner a lump sum amount of $119,159.66. Westinghouse appealed this decision to the Appellate Panel of the Commission, which affirmed the Commissioner's order. Westinghouse then appealed to the circuit court, which dismissed the appeal for lack of subject matter jurisdiction. This Court reversed that decision and remanded the appeal back to the circuit court. *See Skinner v. Westinghouse Elec. Corp.*, 380 S.C. 91, 97, 668 S.E.2d 795, 798 (2008). The circuit court referred the matter to a special referee, who held a hearing and summarily affirmed the Commission's findings. This appeal followed.

## ISSUES PRESENTED

Westinghouse raises two issues on appeal:

I. Does Section 42–11–60 of the South Carolina Code (1985) bar a claimant with pulmonary disease from recovering workers' compensation disability benefits if he cannot show lost wages?

II. Does Section 42–11–70 of the South Carolina Code (1985) bar a claimant with pulmonary disease from recovering benefits if he is not disabled within two

years of the exposure to the substance that caused the disease?

## LAW/ANALYSIS

Westinghouse's arguments on appeal concern the impact of section 42–11–60 on Skinner's right to recover for his pulmonary disease. In particular, it argues Skinner can only recover for total or partial disability under sections 42–9–10 and 42–9–20, respectively. Westinghouse therefore contends the Commissioner erred in finding Skinner's injuries to be compensable as a scheduled loss under section 42–9–30. Our review is limited to deciding whether the Commission's decision is unsupported by substantial evidence or is controlled by some error of law. *See* S.C.Code Ann. § 1–23–380(5)(d) (Supp.2010); *Rodriguez v. Romero,* 363 S.C. 80, 84, 610 S.E.2d 488, 490 (2005). We agree with Westinghouse.

■ Section 42–11–10(D) of the South Carolina Code (1985) generally allows for compensation to be paid to an employee with an occupational disease who suffers from a disability under sections 42–9–10, 42–9–20, or 42–9–30. Section 42–11–10(B)(5) of the South Carolina Code (Supp.2010) exempts from the definition of occupational disease "any disease of the cardiac, pulmonary, or circulatory system." However, this subsection also contains an exception to this exception applicable to Skinner's claim: if the pulmonary disease results from "the *natural entrance into the body* through the skin or *natural orifices thereof of foreign organic or inorganic matter* under *circumstances peculiar to the employment* and the processes utilized therein," then it is an occupational disease. *Id.* (emphasis added). In Skinner's case, his asbestosis was caused by the inhalation of asbestos dust. It is undisputed that asbestos dust was prevalent in his work conditions at Westinghouse due to the particular products it manufactured, and thus, it was peculiar to his employment. Therefore, Skinner's asbestosis is an occupational disease under the statute.

■ However, "[n]o compensation shall be payable for any pulmonary disease arising out of the inhalation of organic or inorganic dust or fumes unless the claimant suffers disability as described in § 42–9–10 or § 42–9–20 and shall not be

compensable under § 42–9–30." *Id.* § 42–11–60 (1985). Because section 42–11–60 is the specific statute governing compensability for pulmonary disease, it controls over the more general language of 42–11–10(D). *See Langley v. Pierce,* 313 S.C. 401, 403, 438 S.E.2d 242, 243 (1993) (citing *Lloyd v. Lloyd,* 295 S.C. 55, 57–58, 367 S.E.2d 153, 155 (1988)) ("Generally, specific laws prevail over general laws and later legislation takes precedence over earlier legislation."). It is uncontested that COPD and asbestosis are pulmonary diseases. Therefore, in order for Skinner to be compensated, he must proceed under sections 42–9–10 or 42–9–20, not section 42–9–30.

■ Sections 42–9–10 and 42–9–20 are commonly known as the "general disability statutes," with section 42–9–10 governing total disability and section 42–9–20 governing partial disability. Both parties concede that Skinner's claim falls under the partial disability statute. Under section 42–9–20, lost wages must be shown in order to receive compensation. S.C.Code Ann. § 42–9–20 (1985) (stating that an employee with partial disability receives "a weekly compensation equal to sixty-six and two-thirds percent of the *difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter,* but not more than the average weekly wage in this State for the preceding fiscal year") (emphasis added). "It is well-settled that an award under the general disability statutes must be predicated upon a showing of a loss of earning capacity, whereas an award under the scheduled loss statute does not require such a showing." *Fields v. Owens Corning Fiberglas,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990) (citing *Roper v. Kimbrell's of Greenville, Inc.,* 231 S.C. 453, 461, 99 S.E.2d 52, 56–57 (1957)).

■ Without question, Skinner has established that he suffers from an occupational disease. However, because his asbestosis is a pulmonary disease, it is not compensable under section 42–9–30, and is only compensable under section 42–9–20, which requires a showing of lost wages. Skinner's workers compensation claim fails because he cannot establish any lost wages occasioned by his asbestosis. In fact, the only evidence of Skinner's wages established that he was making more money with the National Guard than he did when he was

employed by Westinghouse. Because he is unable to prove lost wages, we find that Skinner cannot recover under section 42–9–20, and as a result, does not have a compensable occupational disease.

## CONCLUSION

We reverse the special referee's affirmance of Skinner's award based upon the clear language of section 42–11–60. In that section, the General Assembly specified that recovery for a pulmonary disease such as Skinner's hinges upon a showing of lost wages under section 42–9–10 and 42–9–20. Because our resolution of this issue is dispositive of the appeal, it is not necessary for us to address the remaining issues raised by the parties. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (determining that once an appellate court has addressed an issue that is dispositive to the case, it is unnecessary to address any remaining issues).

**REVERSED.**

PLEICONES, Acting Chief Justice, BEATTY, KITTREDGE, JJ., and Acting Justice JAMES E. MOORE, concur.