**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 15-2008**

_____

LARRY SOUTHERN; ROY SOUTHERN; YVONNE HARRIS; BARBARA PATTERSON, individually and on behalf of others similarly situated in the State of South Carolina,

        Plaintiffs – Appellants,

    and

LUCILLE SOUTHERN; ODELL PARKER; RUTH PARKER,

        Plaintiffs,

    v.

RICHARD H. BISHOFF, PC; RICHARD H. BISHOFF; JOHN M. DEAKLE; JOHN W. BARRETT; BARRETT LAW GROUP, PA; A. JOEL BENTLEY; PAUL T. BENTON; WILLIAM R. COUCH; DAVID O. MCCORMICK; CUMBEST CUMBEST HUNTER & MCCORMICK; CRYMES G. PITTMAN; PITTMAN GERMANY ROBERTS & WELSH, LLP; JOHN MICHAEL SIMMS; EUGENE C. TULLOS; TULLOS & TULLOS; RANCE N. ULMER,

        Defendants – Appellees,

    and

ASBESTOS PROCESSING LLC; A. JOEL BENTLEY LAW OFFICE; CHARLES G. BLACKWELL, JR.; COUCH LAW FIRM; PATRICK C. MALOUF; PORTER & MALOUF, PA; HAMMACK BARRY THAGGARD & MAY, LLP; ANTHONY SAKALARIOS; MORRIS SAKALARIOS & BLACKWELL, PLLC; LAWYER JOHN DOE; LAWYER JANE DOE,

        Defendants,

WILLIAM HOWELL MORRISON,

        Intervenor For Limited Purpose.

_____

Appeal from the United States District Court for the District of South Carolina, at Rock Hill. Joseph F. Anderson, Jr., Senior District Judge. (0:11-cv-01800-JFA)

---

Argued: October 25, 2016               Decided: January 12, 2017

---

Before TRAXLER, KEENAN, and WYNN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: James J. O'Keeffe, IV, JOHNSON, ROSEN & O'KEEFFE, LLC, Roanoke, Virginia, for Appellants. Kurt M. Rozelsky, SMITH MOORE LEATHERWOOD LLP, Greenville, South Carolina; Morris Dawes Cooke, Jr., BARNWELL WHALEY PATTERSON AND HELMS, LLC, Charleston, South Carolina, for Appellees. **ON BRIEF**: Thomas A. Pendarvis, PENDARVIS LAW OFFICES, P.C., Beaufort, South Carolina; Susan F. Campbell, Georgetown, South Carolina, Chad A. McGowen, Randall S. Hood, MCGOWAN, HOOD & FELDER, LLC, Rock Hill, South Carolina; Brent P. Stewart, STEWART LAW OFFICES, Rock Hill, South Carolina, for Appellants. Jason D. Maertens, SMITH MOORE LEATHERWOOD LLP, Greenville, South Carolina, for Appellees Richard H. Bishoff, PC, Richard H. Bishoff, and John M. Deakle; Susan P. McWilliams, William C. Lewis, NEXSEN PRUET, LLC, Columbia, South Carolina, for Appellee William R. Couch; John William Fletcher, BARNWELL WHALEY PATTERSON AND HELMS, LLC, Charleston, South Carolina, for Appellees Crymes G. Pittman, Pittman Germany Roberts & Walsh, LLP, Eugene C. Tullos, Tullos & Tullos, and Rance Ulmer; Elizabeth Van Doren Gray, J. Calhoun Watson, Alexis Lindsay, SOWELL GRAY STEPP & LAFFITTE, L.L.C., Columbia, South Carolina, for Appellee John Michael Sims; Thomas C. Salane, R. Hawthorne Barrett, TURNER PADGET GRAHAM & LANEY P.A., Columbia, South Carolina, for Appellees David O. McCormick and Cumbest Cumbest Hunter & McCormick; Leslie A. Cotter, Jr., RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for Appellee A. Joel Bentley, Jr.; Larry D. Moffett, Shea S. Scott, DANIEL COKER HORTON & BELL, P.A., Oxford, Mississippi, John T. Lay, Jr., Lindsay A. Joyner, GALLIVAN, WHITE & BOYD, P.A., Columbia, South Carolina, for Appellees Barrett Law Group, PA and John W. Barrett; Frank R. Ellerbe, III, ROBINSON, MCFADDEN & MOORE, P.C., Columbia, South Carolina, for Appellee Paul T. Benton.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case arises out of several attorneys' legal representation of several South Carolina employees regarding their personal-injury claims against asbestos manufacturers. The employees' lawsuit alleges that the attorneys breached a duty to instruct them as to how to protect their rights to receive workers' compensation benefits, or at least to notify them that they might need to seek further advice on the issue. The employees appeal district court orders dismissing some defendants for lack of personal jurisdiction and granting summary judgment to others on the merits of the claims. Finding no error, we affirm.

## I.

Viewing the facts in the light most favorable to the employees, as we must in reviewing an order granting summary judgment against them, the record reveals the following. Attorneys Richard Bishoff and John Deakle ("Bishoff/Deakle" collectively) represent workers throughout the Southeast in asbestos-related claims. However, they do not represent employees who have filed workers' compensation claims. In fact, they terminate their representation of clients who file workers' compensation claims because the presence of the workers' compensation issues make the cases much less financially attractive to them.

4

Larry Southern, Roy Southern, Yvonne Harris, and Barbara Patterson (collectively, "Employees") are South Carolinians who worked for decades at Springs Mills, a textile manufacturing plant located in Lancaster, South Carolina. They have all been diagnosed with asbestosis, the result of their exposure to asbestos in the course of their work at Springs Mills.

Three of these individuals stopped working and began collecting Social Security disability benefits for other disabling conditions years before being diagnosed with asbestosis. Patterson stopped working in 1996, when she was diagnosed with, and began collecting Social Security disability payments for, asthma or chronic obstructive pulmonary disease ("COPD"). She was diagnosed with asbestosis in late 2008. Harris stopped working in 1997, when she was diagnosed with COPD and began collecting Social Security disability for that condition. She was first diagnosed with asbestosis in February 2001. Roy Southern stopped working for Springs in 2003 because of back problems, for which he began collecting Social Security disability. He was diagnosed with asbestosis in May 2009.

Larry Southern was laid off from Springs Mills when the plant closed in September 2007, and he was diagnosed with asbestosis in May 2009. He collected unemployment for a year-and-a-half after being laid off, then went to work in August 2009 as a line mechanic/operator for another company at a wage

5

lower than he had been earning in his job at Springs Mills. He works forty hours per week and some overtime and has never missed a day of work for health reasons.

Beginning around 2009, each Employee retained Bishoff/Deakle and others to represent them regarding their personal injury claims against asbestos manufacturers concerning their asbestos exposure. Each Employee's contract of representation provided that the client understood that their attorneys were not being employed to advise them regarding workers' compensation matters. And indeed the attorneys did not provide any advice regarding any possible effect that their personal-injury claims might have on their rights to obtain workers' compensation benefits in South Carolina.

Section 524(g) of the Bankruptcy Code authorizes the creation of asbestos personal-injury trusts for claims made against asbestos manufacturers in bankruptcy. See 11 U.S.C. § 524(g); see generally Barraford v. T&N Ltd., 778 F.3d 258, 260-61 (1st Cir. 2015). Utilizing Mississippi's liberal joinder rules, Employees' attorneys filed suit in that state and obtained recoveries for each Employee from such trusts.

This action was commenced in July 2011 by a single plaintiff, based on diversity jurisdiction, against Bishoff/Deakle and many others, alleging claims for legal malpractice, breach of contract, and breach of fiduciary duty.

6

Although the original plaintiff was not one of the Employees, Employees were later added as plaintiffs and the original plaintiff was dropped from the action.[1]  Employees allege that their defendant-attorneys failed to advise them about legal alternatives available under South Carolina law:  (1) to proceed solely with asbestos tort claims, (2) to proceed solely with workers' compensation claims, or (3) to proceed with both claims simultaneously.  Employees further allege that the defendants failed to advise them that under South Carolina law, see S.C. Code § 42-1-560, they would waive their workers' compensation claims by proceeding with asbestos tort claims unless they provided the statutorily required notice to Springs Mills.  The remedies sought included compensatory and punitive damages and, regarding the breach-of-fiduciary-duty claim, disgorgement of legal fees.

Shortly after this case was filed, the parties agreed to conduct limited discovery and present dispositive motions on the issue of whether Employees had viable workers' compensation claims at the time they retained the defendant-attorneys.  Once the parties conducted this initial discovery, the defendants

---

[1] In their third amended complaint, the named plaintiffs asserted claims for themselves and on behalf of a putative class.  However, the district court subsequently denied Employees' motion for class certification.  See Fed. R. Civ. P. 23(c)(4).

moved for summary judgment in July 2012. In support of their entitlement to summary judgment, they argued that Employees could not prove damages from any alleged breach because when the defendants were retained, Employees did not have viable workers' compensation claims. The defendants advanced three reasons why the claims were not viable at the time they commenced representing Employees: First, Employees did not meet a statutory requirement of having become disabled from asbestosis within two years after their last exposure to asbestos; second, they were not disabled as a result of asbestosis at the time they retained the defendants or at any later time; and third, they did not have lost wages due to asbestosis because Larry Southern continues to work full-time and the other three Employees stopped working due to other health conditions. Their motion included the affidavit of an expert, Dr. John Allen Dicks Cooper, Jr., who opined to a reasonable degree of medical certainty that none of the Employees had suffered or did suffer from any total or partial disability caused, or contributed to, by asbestosis.

Employees opposed the motion. Regarding the contention that they were not disabled as a result of asbestosis, Employees

submitted the affidavit of their expert, Dr. William Alleyne,[2] stating:

> I was retained to provide a diagnosis of the named Plaintiffs and opine, to a reasonable degree of medical certainty, as to whether any of the named Plaintiffs suffer from a current impairment; whether they need or will need medical treatment; whether they have any restrictions; and whether their diagnosis is causally related [to] the history of work related exposure to asbestos provided by the patient and through records submitted by certain out-of-state law firms in support of claims made against various bankrupt asbestos manufacturers.

Alleyne Aff. p.2 (ECF No. 70-3) (emphasis added). The affidavit stated that, as a result of workplace exposure to asbestos dust, Roy Southern, Harris, and Patterson were each unable to work due to asbestosis.[3] The affidavit also stated that Larry Southern had asbestosis resulting from his workplace exposure and it "did prevent [him] from frequently to continuously walking across a large manufacturing plant, bending/stooping twisting/ kneeling/ crouching on a frequent to continuous basis, lifting up to 50 pounds frequently (required in his previous job [at Springs Mills] as a plant mechanic/technician) such that he necessarily must work at a job with lighter physical demands." Alleyne Aff. pp.6-7 (ECF No. 70-3). Dr. Alleyne did not offer any opinion as

---

[2] Employees had identified Dr. Alleyne as an expert on June 1, 2012. They later identified him again on August 8, 2014.

[3] Dr. Alleyne opined that Harris's and Patterson's oxygen-dependent respiratory failure and Harris's COPD were "aggravated by [their] asbestosis." Alleyne Aff. pp. 2-3 (ECF No. 70-3).

9

to any Employee regarding when their asbestosis first impacted their abilities to work.

The district court denied summary judgment in February 2013, stating that there was "too much of a possibility of a genuine issue of material fact." J.A. 832.

Shortly thereafter, Employees amended their complaint to add additional defendants, and many of the newly added defendants filed motions to dismiss for lack of personal jurisdiction. (We refer to all defendants collectively as "Attorneys.") Following limited discovery on this jurisdictional issue, the court dismissed some of the Attorneys without prejudice, while ruling that it possessed personal jurisdiction over the others.

On January 8, 2015, the district court issued an amended scheduling order imposing a discovery deadline of February 9, 2015, and a deadline for dispositive motions of February 24, 2015, with the trial to take place in April 2015. The district court later established a trial date of July 7, 2015.

Dr. Alleyne was deposed on February 6, 2015. He testified that while he believed to a reasonable degree of medical certainty that all Employees were disabled by asbestosis on the date he examined them, he had not formed any opinion – or attempted to form one – concerning when they first contracted

10

asbestosis or became disabled from the disease.[4]  Regarding Patterson, Dr. Alleyne was specifically asked whether he even could say whether she was disabled due to asbestosis the day before he examined her, and he answered that he could not.

When asked whether he was intending to offer any opinions regarding when Larry Southern became disabled from asbestosis, Dr. Alleyne explained that those who have been exposed to asbestos dust would be "disabled" in the sense that continued exposure would place them at unreasonable risk of developing different diseases.  In that (non-legal) sense, Dr. Alleyne testified, Larry Southern became disabled shortly after his first exposure to asbestos.  But see S.C. Code § 42-11-20 (providing that "'partial disability' means the physical inability to continue work in [the last occupation when exposure occurred] only and 'total disability' means the physical inability to perform work in any occupation").

---

[4] Dr. Alleyne also testified that Roy Southern was totally and permanently disabled as a result of his back problems at the time he examined him, and he offered no opinion concerning what percentage of his inability to work was due to asbestosis as opposed to the back problems.

Following completion of discovery, the remaining defendants filed motions for summary judgment on all claims.[5] The bases Attorneys asserted for summary judgment included those they had asserted in their 2012 summary judgment motions regarding Employees' inability to demonstrate that they had viable workers' compensation claims at the time they retained Attorneys. Accordingly, they argued that Employees did not become disabled from asbestosis within two years after they were last exposed to asbestos; they were not disabled from asbestosis at the time they retained Attorneys or at any later time; and they did not lose wages due to asbestosis because Larry Southern continues to work full-time and the other Employees stopped working due to other health conditions. Regarding Employees' failure to show that they were disabled by asbestosis when they retained Attorneys, Attorneys pointed out that even Employees' expert had offered no opinion on the subject.

The district court allowed Employees until April 23, 2015, to respond to Attorneys' motions. In their response filed on that date, Employees included "supplemental" affidavits of Dr. Alleyne (the "Supplemental Affidavits"). The affidavits included the statement that "[d]uring the course of [his]

---

[5] In late January 2015, Employees had filed a motion for partial summary judgment.

12

deposition, counsel for [Attorneys] asked certain questions, some of which [Dr. Alleyne] had not been asked to consider previously." J.A. 3205, 3212, 3224, 3231. The affidavits stated that "[s]ince that time, [he] ha[d] been asked to consider and provide more specific information related to some of those questions." J.A. 3205, 3212, 3224, 3231. In the affidavits, Dr. Alleyne opined for the first time that Employees actually were disabled from asbestosis when they stopped working at Springs Mills.

Attorneys moved to strike these affidavits, contending they were improper under the Rules of Civil Procedure, the applicable scheduling order, and case law. Employees responded that the affidavits were proper supplemental expert-witness disclosures under Rule 26(e)(2). See Fed. R. Civ. P. 26(e)(2). They argued that even assuming that the disclosures were late, they were substantially justified because they were responsive to the deposition questions. The district court took the motion under advisement.

The court never explicitly addressed the merits of the motion to strike. Ruling on the parties' summary judgment motions, the district court granted Attorneys' and denied Employees'. The court reasoned that under any of Employees' three causes of action, they would need to establish damages proximately caused by Attorneys' actions, and thus Employees

13

would have to show that they had viable workers' compensation claims at the time they retained Attorneys. The court ruled that Employees could not show they had viable workers' compensation claims at that time because, for their asbestosis to be compensable under the Act, they would need to have become disabled from asbestosis within two years of their last exposures at Springs Mills.[6] Based on the record developed during discovery (which would exclude the Supplemental Affidavits), the court concluded that Employees had failed to forecast sufficient evidence to create a genuine dispute of material fact on that point. The court further ruled that testimony they submitted from a former workers' compensation commissioner that every case has some settlement value also was not sufficient to create a genuine factual dispute regarding damages. And the court rejected an argument from Employees that even if their other claims failed, their fiduciary-duty claim could survive even without proof of damages since Employees

---

[6] S.C. Code § 42-11-70 provides:

> Neither an employee nor his dependents shall be entitled to compensation for disability or death from an occupational disease, except that due to exposure to ionizing radiation, unless such disease was contracted within one year after the last exposure to the hazard peculiar to his employment which caused the disease, save that in the case of a pulmonary disease arising out of the inhalation of organic or inorganic dusts the period shall be two years.

14

sought disgorgement of attorneys' fees as a remedy under that claim. The district court concluded that Attorneys were entitled to summary judgment on that cause of action as well because it arose out of the same operative facts as the legal malpractice claim.[7] Having granted summary judgment against Employees, the district court denied as moot Attorneys' motion to strike the Supplemental Affidavits.

## II.

Employees argue that the district court erred in granting summary judgment against them. We disagree.

"We review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." T-Mobile Ne., LLC v. City Council of Newport News, 674 F.3d 380, 384–85 (4th Cir. 2012) (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[7] The court also concluded that several defendants were entitled to summary judgment on additional grounds not relevant to our decision.

15

"Because we are sitting in diversity, our role is to apply [South Carolina] law, or, if necessary, predict how the state's highest court would rule on an unsettled issue." Horace Mann Ins. Co. v. General Star Nat'l Ins. Co., 514 F.3d 327, 329 (4th Cir. 2008).

"A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach."[8] RFT Mgmt. Co. v. Tinsley & Adams L.L.P., 732 S.E.2d 166, 170 (S.C. 2012). As to damages, "the plaintiff must show he or she 'most probably' would have been successful in the underlying suit if the attorney had not committed the alleged malpractice." See Hall v. Fedor, 561 S.E.2d 654, 657 (S.C. Ct. App. 2002) (emphasis omitted). The plaintiff can make that showing either by proving that, but for the malpractice, he most probably would have received a settlement larger than the one he received or most probably would have prevailed on the underlying claim at trial. See id. Either way, "the client must show at least that he has lost a

---

[8] "The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." S. Glass & Plastics Co. v. Kemper, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012).

16

probability of success as a result of the attorney's negligence." Doe v. Howe, 626 S.E.2d 25, 32 (S.C. Ct. App. 2005) (internal quotation marks omitted).

A.

Employees first argue that the district court erred in concluding that they did not possess viable workers' compensation claims at the time Attorneys agreed to represent them. We disagree. Like the district court, we conclude that Employees failed to create a genuine factual dispute regarding the viability of their workers' compensation claims, although our reasoning differs from the district court's. See MM ex rel. DM v. School Dist. of Greenville Cty., 303 F.3d 523, 536 (4th Cir. 2002) ("[W]e are entitled to affirm the court's judgment on alternate grounds, if such grounds are apparent from the record."). We conclude that Employees' workers' compensation claims were not viable because they failed to create a genuine factual dispute concerning whether they incurred any lost wages as a result of asbestosis.

A worker covered by the Workers' Compensation Act (the "Act") who has been accidentally injured can be entitled to receive benefits under the "general disability" statutes, §§ 42-

17

9-10 and 42-9-20, or the "scheduled loss" statute, § 42–9–30.[9] See Hutson v. South Carolina State Ports Auth., 732 S.E.2d 500, 502 (S.C. 2012); see also S.C. Code § 42-11-10(D) ("No compensation shall be payable for any occupational disease unless the employee suffers a disability as described in Section 42-9-10, 42-9-20, or 42-9-30."). And, "the disablement or death of an employee resulting from an occupational disease shall be treated as an injury by accident." S.C. Code § 42-11-40; see also S.C. Code § 42-1-160 ("'Injury' . . . mean[s] only injury by accident arising out of and in the course of employment and shall not include a disease in any form, except when it results naturally and unavoidably from the accident and except such diseases as are compensable under the provisions of Chapter 11 of this Title."). Disability due to asbestosis caused by asbestos-dust inhalation constitutes an occupational disease within the meaning of this section. See Skinner v. Westinghouse Elec. Corp., 716 S.E.2d 443, 445 (S.C. 2011); see also S.C. Code § 42-11-10(B)(5).

---

[9] "The general disability statutes offer compensation for total and partial disability, including a provision for wage loss benefits." Hutson v. South Carolina State Ports Auth., 732 S.E.2d 500, 502 (S.C. 2012).

18

Nevertheless, the Act limited Employees' options for proving a compensable injury. The Act states that "[n]o compensation shall be payable for any pulmonary disease arising out of the inhalation of organic or inorganic dust or fumes unless the claimant suffers disability as described in Section 42-9-10 or Section 42-9-20 and shall not be compensable under Section 42-9-30." S.C. Code § 42-11-60. Since § 42-11-60 specifically addresses the compensability for pulmonary disease, and it is undisputed asbestosis is a pulmonary disease, Employees could only be entitled to compensation under §§ 42-9-10 or 42-9-20. Unless Employees were entitled to compensation under § 42-11-60, their pulmonary disease is not even deemed to be an "accident" within the meaning of the Act. See Drake v. Raybestos-Manhattan, Inc., 127 S.E.2d 288, 291 (S.C. 1962) (involving statute that was predecessor to § 42-11-60 providing that "[n]o compensation shall be payable for any pulmonary disease arising out of the inhalation of organic or inorganic dusts unless the claimant shall have been exposed thereto by his employment for a period of at least one year and unless he suffers a total disability therefrom"), overruled on other grounds, Hunt v. Whitt, 306 S.E.2d 621 (S.C. 1983).

This distinction is important in this case because "an award under the general disability statutes [§§ 42-9-10 or 42-9-20] must be predicated upon a showing of a loss of earning

19

capacity, whereas an award under the scheduled loss statute [§ 42-9-30] does not require such a showing." Skinner, 716 S.E.2d at 446 (internal quotation marks omitted). Thus, in the case of partial disability, a claimant would be entitled to "weekly compensation equal to sixty-six and two-thirds percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter." S.C. Code § 42-9-20; see also Skinner, 716 S.E.2d at 445 ("Under section 42-9-20, lost wages must be shown in order to receive compensation."). The claimant bears the burden of proving the lost wages. See Coleman v. Quality Concrete Prods., Inc., 142 S.E.2d 43, 45 (S.C. 1965).

Attorneys argue, for several reasons, that the district court correctly concluded that Employees did not have viable workers' compensation claims when Attorneys commenced representation. The one we focus on here is Attorneys' contention that Employees have not forecast evidence that they suffered lost wages as the result of asbestosis, as §§ 42-9-10 and 42-9-20 require they must in order to have a compensable injury. Employees offer two responses. First, they cite the principle that "[t]he law in effect at the time of the injury governs the rights of the parties and not the law effective at the time the award is made." Sellers v. Daniel Constr. Co., 330 S.E.2d 305, 306 (S.C. 1985) (internal quotation marks omitted).

20

Employees contend that prior to issuing Skinner in 2011, the South Carolina Supreme Court had not yet explicitly held that claims based on asbestosis from asbestos inhalation must be pursued under the general-disability statutes rather than the scheduled-loss statute. They argue that had they proceeded under the scheduled-loss statute, § 42-9-30, they could have obtained compensation without proving lost wages.

However, whether the Supreme Court had explicitly resolved the issue prior to issuing Skinner is beside the point. Even on the dates each of the Employees stopped working at Springs Mills, § 42-11-60 plainly precluded Employees from proceeding under the scheduled-loss statute, and Employees suggest no reason why § 42-11-60 could have been read otherwise. Thus, even prior to Skinner, the Act required them to prove they lost wages due to their asbestosis in order to establish a right to compensation.[10]

---

[10] Employees argue that, prior to the issuance of Skinner, the South Carolina Workers' Compensation Commission had allowed claimants under facts analogous to the facts of this case to proceed under § 42-11-30. However, regardless of whether Employees could have prevailed at the Commission level prior to the issuance of Skinner, it would be mere speculation to conclude that such an award would not have been reversed on appeal.

Employees also assert that they <u>did</u> forecast admissible evidence that they lost wages due to asbestosis. We disagree with this proposition. On this point we note initially that Employees were not entitled to rely on the Supplemental Affidavits, which they submitted nearly two months after the deadline for completion of discovery. These Supplemental Affidavits were, and are, properly ignored. A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). But "the party seeking an extension must show that, despite due diligence, it could not have reasonably met the scheduled deadlines." 3 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 16.14[1][a], p. 16-75 (3d ed. 2016). Employees certainly could not meet that standard here.

Employees offered no justification whatsoever for not producing evidence on that point prior to the discovery deadline. Attorneys had made the timing of the onset of any asbestos-caused disability a critical issue for several years, from the start of this case. The timing was central to their claims that Employees were not disabled within two years of their last exposure to asbestos at Spring Mills, that Employees did not yet have viable workers' compensation claims when Attorneys commenced to represent them, and that no Employees suffered lost wages due to disability from asbestosis. Thus, Employees certainly failed to demonstrate the "good cause" they

22

would have needed to show in order to have the deadline extended.

In the district court Employees argued that they were entitled to submit these affidavits after the discovery deadline because they were entitled to supplement their Rule 26(a)(2) disclosures under Rule 26(e) regarding the opinions of their expert witness. See Fed. R. Civ. P. 26(a)(2). But Rule 26(e) merely places the duty on an expert witness to supplement his report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). In contrast, Employees' presentation of these new opinions were not proper Rule 26(e) supplements, but rather were "poorly disguised attempts to counter [Attorneys'] arguments with new expert analyses." EEOC v. Freeman, 778 F.3d 463, 467 n.7 (4th Cir. 2015) (internal quotation marks omitted). There was no basis for the district court to consider the tardy opinions. See Gallagher v. S. Source Packaging, LLC, 568 F. Supp. 2d 624, 631 (E.D.N.C. 2008) ("Courts distinguish 'true supplementation' (e.g., correcting inadvertent errors or omissions) from gamesmanship, and have therefore repeatedly rejected attempts to avert summary judgment by 'supplementing' an expert report with

23

a 'new and improved' expert report.").[11]  Accordingly, in determining Attorneys' entitlement to summary judgment, we consider the summary judgment record as it existed on the date of the deadline for completing discovery.  We conclude that Employees failed to forecast sufficient evidence of lost wages due to asbestosis.

As we have stated, Patterson, Harris, and Roy Southern had stopped working and were collecting Social Security payments based on disability from other conditions years before they were diagnosed with asbestosis.  After the close of discovery, when Attorneys moved for summary judgment, Employees had forecast no evidence that they were disabled due to asbestosis at the time

_____

[11] Employees argue that even if their claims for disability benefits were not viable because their asbestosis did not cause them to lose wages, they still could have claims for medical treatment under the Act.  See S.C. Code § 42-15-60 (entitling employees who have suffered an "injury" within the meaning of the Act to medical benefits).  We disagree.  Under § 42-11-60, Employees must suffer a disability within the meaning of §§ 42-9-10 and -20 for their asbestosis even to be treated as an "injury" within the meaning of the Act.  See Drake v. Raybestos-Manhattan, Inc., 127 S.E.2d 288, 291 (S.C. 1962) (involving predecessor statute to § 42-11-60), overruled on other grounds, Hunt v. Whitt, 306 S.E.2d 621, 622 (S.C. 1983).  Without lost wages resulting from asbestosis, Employees had no compensable injury.  Cf. Skinner v. Westinghouse Elec. Corp., 716 S.E.2d 443, 445-46 (S.C. 2011) (holding that when the claimant could not establish lost wages caused by his asbestosis, his asbestosis was not compensable and there was no need to address whether his workers' compensation claim was time barred).

they stopped working at Springs Mills. And their expert, Dr. Alleyne, had specifically testified in his deposition that he had not even tried to determine whether they were disabled due to asbestosis prior to the time he examined them. Accordingly, at the time Attorneys moved for summary judgment, Employees had failed to forecast evidence that their inability to perform their jobs was due to asbestosis.

Like the other three Employees, Larry Southern was also unable to show that asbestosis caused him to lose wages. He stopped working at Springs Mills only because he was laid off when the plant closed in September 2007. After collecting unemployment benefits for a year-and-a-half, he went to work for another company in August 2009.[12] And he has not shown any reduction in his wages due to asbestosis since he started with the new company. Accordingly, like the other Employees, he

_____

[12] Larry Southern states that he originally considered taking a different position with the new company and that the position was too physically taxing for him. However, an affidavit from the human resources manager of Southern's new employer stated that the position he took was the highest paying one he was qualified for in light of his education and experience, and nothing in the summary judgment record contradicts that.

25

failed to create a genuine factual dispute concerning whether he possessed a viable workers' compensation claim.[13]

## B.

Employees contend that regardless of the legal viability of their workers' compensation claims, they could prove damages from Attorneys' failure to protect their workers' compensation rights because they at least forecasted evidence they would have recovered some amount in settlement of their claims had the Attorneys adequately protected them. Employees point to deposition testimony from Robert Hundley, a former Workers'

---

[13] Employees point to Dr. Alleyne's deposition testimony that Larry Southern became "disabled" shortly after his first exposure to asbestos. J.A. 3859. However, the context of that testimony makes clear that he was not using the word "disabled" to have the meaning it has in the context of the Act, which refers to the physical inability of a claimant to work. See S.C. Code § 42-11-20 ("'[P]artial disability means the physical inability to continue work [in the job in which the exposure occurred] and 'total disability' means the physical inability to perform work in any occupation."); see J.A. 2301 (Dr. Alleyne's testimony that "[w]hen you say disabled . . . we're talking about the difference between attorneys and physicians."). Dr. Alleyne was opining that it would be medically dangerous for someone who has been exposed to asbestos to continue to be exposed. See J.A. 3859 (stating that a person who has been exposed to asbestos dust "would be considered disabled from the viewpoint that he or she could not work in their usual occupation or would be limited in the types of jobs they could do, because once you're exposed to asbestos, you then run the risk of not only developing asbestosis but also the various malignancies associated with asbestos dust exposure and inhalation thereof and so therefore you should not be working in those capacities").

Compensation Commissioner and practicing lawyer who testified that he has represented hundreds of parties in workers' compensation matters and, in his experience, almost all workers' compensation cases settle. He indicated that he would have obtained a settlement had he represented these Employees, and the only question would have been the amount of the settlement.

Even assuming that Employees' legal theory is otherwise sound, we conclude that Employees have not forecasted admissible evidence sufficient to create a genuine factual dispute concerning whether they would have settled their claims had they preserved their rights to bring them.[14] Employees forecast no evidence that Hundley was able to obtain settlements for claimants who had no lost wages, which calls into question whether he could intelligently testify about whether an insurance carrier would even be willing to settle such a case. And even assuming that frivolous claims have some settlement value, there would be no nonspeculative basis for a factfinder to conclude that these particular parties would have been able to agree regarding the value of their claims, as they would need to do in order to achieve a settlement. Cf. Fuschetti v. Bierman, 319 A.2d 781, 784 (N.J. Super. Ct. Law Div. 1974)

---

[14] Attorneys argue that making claims on the personal injury trusts did not waive Appellants' right to file workers' compensation claims in any event. We do not address this issue.

27

("Because no expert can suppose with any degree of reasonable certainty the private blends of hopes and fears that might have come together to produce a settlement before or during trial, expert testimony as to reasonable settlement value will be excluded as irrelevant."); Campbell v. Magana, 184 Cal. App. 2d 751, 758 (Cal. Dist. Ct. App. 1960) (plaintiff in legal malpractice action could not show damages based on nuisance value of case where evidence shows that best settlement offer was $350 and plaintiff had said she would not settle for less than $100,000; thus prospect of settlement was speculative). For all of these reasons, we conclude that the district court properly determined that Employees failed to forecast sufficient evidence of damages from any failure on the part of Attorneys to protect their right to workers' compensation.

## C.

Employees also argue that even if they could not prove damages from Attorneys' alleged breach of duty, the district court erred in granting summary judgment against them on their fiduciary-duty claim. Employees argue that their claim remained viable because Employees sought forfeiture of attorneys' fees. See Hendry v. Pelland, 73 F.3d 397, 401-02 (D.C. Cir. 1996) (collecting cases supporting proposition that "courts in other jurisdictions have held that clients must prove injury and proximate causation in a fiduciary duty claim against their

28

lawyer if they seek <u>compensatory damages</u>, not if . . . they seek only <u>forfeiture of legal fees</u>"). We disagree. Even assuming that Employees' fiduciary-duty claims were viable to the extent that the summary judgment record supported fee disgorgement, Employees failed to forecast evidence that could warrant such relief.[15]

Employees do not dispute that for a plaintiff to show entitlement to disgorgement of legal fees for breach of fiduciary duty, the South Carolina Supreme Court would, at a minimum, require that the plaintiff satisfy the <u>Restatement (Third)</u> standard of proving a "clear and serious violation" by the defendant lawyer. <u>See</u> Corrected Reply Brief of Employees at 19 (citing <u>Restatement (Third) of the Law Governing Lawyers</u> § 37 (2000), for the proposition that "[a] lawyer engaging in a clear and serious violation of a duty to a client may be required to forfeit some or all of the lawyer's compensation for the matter"). But nothing in the summary judgment record could justify a conclusion that Attorneys' conduct rose to that level. As we have explained, Employees cannot even demonstrate that they had viable claims at the time Attorneys commenced

---

[15] Because we affirm on this basis, we do not address the correctness of the district court's conclusion that Attorneys were entitled to summary judgment on the fiduciary-duty claim because it arose out of the same operative facts as the legal malpractice cause of action.

representing them.  And Employees' representation contracts plainly stated that their attorneys would not be advising them regarding any workers' compensation claims.  It is possible that an applicable duty of care may nonetheless have required Attorneys to protect Employees' rights.  But there would be no basis for a reasonable factfinder to conclude that any failure to advise Employees concerning their (non-existent) right to workers' compensation claims amounted to "a clear and serious violation" of their duty to their clients.  Thus, the district court properly granted summary judgment against Employees on the fiduciary-duty claims as well.[16]

### III.

In sum, because we conclude that the district court properly granted summary judgment against Employees, we affirm.

<u>AFFIRMED</u>

---

[16] Employees also maintain that the district court erred in dismissing claims against several Attorneys for lack of jurisdiction.  We conclude, however, that the district court properly dismissed these parties on that basis.