**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

James Freshley, Claimant, Appellant,

v.

Conbraco Industries, Inc., Employer, and Great American Alliance Insurance Company, Carrier, Respondents.

Appellate Case No. 2023-000185

———————

Appeal from the Workers' Compensation Commission

———————

Unpublished Opinion No. 2025-UP-310
Heard February 12, 2025 – Filed September 10, 2025

———————

**REVERSED AND REMANDED**

———————

Stephen J. Wukela, of Wukela Law Office, of Florence, for Appellant.

David Alan Wilson, of Wilson & Englebardt, LLC, of Greenville, for Respondents.

———————

**PER CURIAM:**  Appellant James Freshley appeals the South Carolina Workers' Compensation Commission's (the appellate panel) order denying his claim that he suffered a disabling occupational disease.  Freshley challenges the appellate panel's

denial on the grounds that the appellate panel erred by (1) failing to properly apply the legal standard for occupational disease contrary to the substantial evidence and (2) failing to find that Freshley suffered from a disabling occupational disease. We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In August 2019, Freshley filed a claim seeking workers' compensation benefits on the ground that he suffered from reactive airway disease—occupational asthma—as a result of exposure to chemicals during his employment at Respondent Conbraco Industries (Conbraco), a valves manufacturer.

Freshley worked for Conbraco from 2007 to 2020. During most of his employment, Freshley worked on the "zinc line"—which required bathing manufactured parts in a variety of chemicals—a process that emitted visible fumes. The zinc line was located in the shipping department alongside other processes that used chemicals. In May 2019, Freshley informed Renee Chaisson, Conbraco's human resources manager, that he believed fumes from the zinc coating process were causing him to experience shortness of breath. On May 8, 2020, while Freshley was out on leave for unrelated surgery, he and thirteen other employees were laid off.

In February 2019, Freshley had expressed concern to his cardiologist, Dr. Prabal Guha, that exposure to workplace chemicals may be causing his shortness of breath. While Freshley had previously experienced shortness of breath related to an atrial fibrillation (afib) diagnosis, the shortness of breath persisted even when his afib had successfully been treated. Dr. Guha referred Freshley to Dr. Vinod Jona, a pulmonologist, to address the issue.

After ordering a series of tests including a CT scan, a VQ scan, and spirometry tests, Dr. Jona diagnosed Freshley with occupational asthma. Dr. Jona found that his chemical exposure in the workplace was clinically significant, there was a temporal association between the exposure and symptom onset, and Freshley worked in an occupation known to be at risk for the development of lung disease. Dr. Jona referred Freshley to Dr. Robert Miller, another pulmonologist, to verify the cause of his symptoms.

Dr. Miller ultimately agreed with Dr. Jona that Freshley's symptoms were consistent with reactive airway disease—i.e., occupational asthma—caused by exposure to chemicals in the workplace. Dr. Miller conducted several tests,

including a spirometry test, an x-ray, a diffusion test, a cardiopulmonary stress test (CPET), a CAT scan, and a pulmonary function test (PFT), to exclude alternative causes of Freshley's shortness of breath such as cardiopulmonary disease, pleural disease, and chronic obstructive pulmonary disease. Additionally, Dr. Miller referred Freshley to Dr. John Sturdivant, a cardiologist specializing in electrophysiology, to determine the relationship between Freshley's cardiac issues and his shortness of breath. Dr. Sturdivant concluded Freshley's cardiac issues were not the cause of his shortness of breath.

During Dr. Miller's deposition, after viewing Material Safety Data Sheets (MSDS) for the seventeen chemicals used in Conbraco's shipping department, he testified that while he had not seen the MSDS prior to this deposition, his diagnosis was consistent with exposure to these chemicals. On cross-examination, Dr. Miller conceded that, while treating Freshley, he did not have an independent source of information as to the type and extent of chemical exposure other than Dr. Jona's notes and Freshley's self-report.

In June 2021, a single commissioner held a hearing on Freshley's workers' compensation claim.[1] Freshley, Chaisson, and Karen Brooks, Conbraco's environmental health and safety manager, testified at the hearing. Other medical evidence consisted of patient notes from Dr. Guha, Dr. Jona, Dr. Miller, and Dr. Sturdivant; deposition testimony from Dr. Miller and Dr. Sturdivant; and medical test results. The MSDS were also before the single commissioner. Additionally, Conbraco entered into evidence the medical opinion of Dr. Gregory Feldman[2] in the form of a two-page letter.

Dr. Feldman disagreed with Freshley's diagnosis. Dr. Feldman explained that reactive airways dysfunction syndrome[3] is not an appropriate diagnosis if the

---

[1] Initially, Freshley claimed injury to his lungs, skin, and resulting headaches. The single commissioner found Freshley failed to meet his burden of proving injury by accident or occupational illness within the course and scope of his employment. On appeal, Freshley challenged the findings as to only the injury by accident or occupational disease to his lungs.

[2] Dr. Feldman is triple-board certified in the specialties of internal medicine, pulmonary medicine, and critical care.

[3] Notably, Freshley claimed to suffer from occupational asthma, or reactive airway disease, *not* reactive airway dysfunction syndrome. Dr. Feldman's letter refers only to reactive airway dysfunction syndrome, while Dr. Miller appears to reference both reactive airway disease and reactive airway dysfunction syndrome. At oral

treating physician lacks a "clear understanding of the chemical involved [and] the extent of the exposure" and has not ruled out alternative explanations for the patient's symptoms. In Dr. Feldman's opinion, Dr. Miller failed to exclude other causes of Freshley's shortness of breath. Dr. Feldman ultimately concluded the medical evidence did not support a diagnosis of reactive airway dysfunction syndrome because the diagnosis requires an exclusion of alternative explanations, and he believed the "presence of multiple comorbidities more than adequately explain[ed] all [Freshley's] symptoms." Conbraco also entered into evidence an addendum to Dr. Feldman's opinion in which he noted that Freshley's complaints about shortness of breath were "highly non-specific" and had been complained of "over the years." Dr. Feldman opined that the shortness of breath was "more likely than not related to his several significant comorbidities that include anemia, obesity, and heart condition[.]"

The single commissioner denied Freshley benefits on the ground that Freshley failed to meet his burden of proving a compensable injury by occupational illness to his lungs within the course and scope of his employment. Freshley appealed to the appellate panel. The appellate panel affirmed the single commissioner's order and mirrored the single commissioner's findings with a few amendments. This appeal followed.

## STANDARD OF REVIEW

"Our review is limited to deciding whether the [appellate panel]'s decision is unsupported by substantial evidence or is controlled by some error of law." *Skinner v. Westinghouse Elec. Corp.*, 394 S.C. 428, 432, 716 S.E.2d 443, 445 (2011). "'Substantial evidence' is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the same conclusion as the [appellate panel]." *Pack v. State Dep't of Transp.*, 381 S.C. 526, 536, 673 S.E.2d 461, 466 (Ct. App. 2009). "When the evidence is conflicting over a factual issue, the findings of the [a]ppellate [p]anel are conclusive." *Brunson v. Am. Koyo Bearings*, 395 S.C.

argument, counsel for both parties were questioned about this discrepancy. Freshley's counsel acknowledged that the terms were used interchangeably but confirmed that reactive airway disease is the alleged diagnosis. Conbraco's counsel argued these are separate, distinct diseases and conceded that Dr. Feldman's opinion spoke only about reactive airway dysfunction syndrome rather than the disease with which Freshley was diagnosed. We have elected to treat the terms as interchangeable, consistent with the appellate panel's approach.

450, 455, 718 S.E.2d 755, 758 (Ct. App. 2011). "The final determination of witness credibility and the weight to be accorded evidence is reserved to the [a]ppellate [p]anel." *Id.* (quoting *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 528, 593 S.E.2d 491, 495 (Ct. App. 2004)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Jones v. Harold Arnold's Sentry Buick, Pontiac*, 376 S.C. 375, 378, 656 S.E.2d 772, 774 (2008) (quoting *Lee v. Harborside Cafe*, 350 S.C. 74, 78, 564 S.E.2d 354, 356 (Ct. App. 2002)).

"Where the evidence is susceptible of but one reasonable inference, the question is one of law for the court rather than one of fact for the [appellate panel]." *Mullinax v. Winn-Dixie Stores, Inc.*, 318 S.C. 431, 437, 458 S.E.2d 76, 80 (Ct. App. 1995). "[I]f all the evidence points to one conclusion or the [appellate panel]'s findings 'are based on surmise, speculation or conjecture, then the issue becomes one of law for the court . . . .'" *Clemmons v. Lowe's Home Centers, Inc.-Harbison*, 420 S.C. 282, 288, 803 S.E.2d 268, 271 (2017) (quoting *Polk v. E.I. duPont de Nemours Co.*, 250 S.C. 468, 475, 158 S.E.2d 765, 768 (1968)).

## LAW/ANALYSIS

Freshley argues the appellate panel erred in denying his claim because its finding that he did not have an occupational disease is unsupported by the substantial evidence. We agree.

In order to receive workers' compensation benefits for contracting an occupational disease, a claimant must (1) prove a disease, and:

2. The disease must arise out of and in the course of the claimant's employment;

3. The disease must be due to hazards in excess of those hazards that are ordinarily incident to employment;

4. The disease must be peculiar to the occupation in which the claimant was engaged;

5. The hazard causing the disease must be one recognized as peculiar to a particular trade, process, occupation, or employment; and

6. The disease must directly result from the claimant's continuous exposure to the normal working conditions of the particular trade, process, occupation, or employment.

*Fox v. Newberry Cnty. Mem'l Hosp.*, 319 S.C. 278, 281, 461 S.E.2d 392, 394 (1995) *see* S.C. Code. Ann. § 42-11-10(A); *see also Sturkie v. Ballenger Corp.*, 268 S.C. 536, 542, 235 S.E.2d 120, 123 (1977) ("The settled rule is that where the work and its own environment of circumstance expose the employee to the happening of an event causing an accident, the accident arises out of the employment."). "An occupational disease is one which develops over a period of time as opposed to an injury that is attributable to a one-time event." *Brunson*, 395 S.C. at 456, 718 S.E.2d at 759. "[C]ircumstantial evidence may be used to prove causation." *Mullinax*, 318 S.C. at 437, 458 S.E.2d at 80.

"Expert medical testimony is designed to aid the [appellate panel] in coming to the correct conclusion. Therefore, the [appellate panel] determines the weight and credit to be given to the expert testimony. Once admitted, expert testimony is to be considered just like any other testimony." *Corbin v. Kohler Co.*, 351 S.C. 613, 624, 571 S.E.2d 92, 98 (Ct. App. 2002) (citations omitted). However, "a medical opinion which conflicts with the physical facts will not be permitted to control the determination of a factual controversy." *Poston v. Se. Const. Co.*, 208 S.C. 35, 38, 36 S.E.2d 858, 860 (1946) (quoting *Moyle v. Mutual Life Ins. Co.*, 201 S.C. 146, 21 S.E.2d 561, 564 (1942)).

The appellate panel concluded that Freshley did not sustain any compensable occupational disease, noting its findings were "based primarily on the medical evidence" and that the medical evidence did not support "a causal connection" between Freshley's medical symptoms and any alleged exposure at work. The appellate panel made the following findings to support its decision:

23. It is noteworthy that none of the treating or evaluating physicians had specific details regarding the specific department in which [Freshley] worked or any specific chemicals to which [Freshley] was directly exposed and for what amounts of time, if any.

24. Additionally, none of the physicians could exclude [Freshley's] serious pre-existing comorbidities as the basis or at the very least a contributing factor to [Freshley's]

medical condition. As such, the undersigned could not exclude those factors as well. . . .

25. In reaching our conclusion that [Freshley] has failed to meet his burden of proof, specifically, *we give great weight to the opinions and testimony of Dr. Feldman . . . .* Dr. Feldman was uniquely positioned to comprehensively review all of the *relevant* medical evidence, including Dr. Miller's testimony, and after doing so, was unable to draw a causal relationship between [Freshley's] employment and his symptoms, but instead concluded that the presence of [Freshley's] multiple comorbidities more adequately explained [Freshley's] symptoms. He further found that the diagnosis of [reactive airway dysfunction syndrome] was neither supported by the required criteria for exclusion of alternative explanations nor was it supported by any reliable medical evidence.

26. In fact, in analyzing the evidence and reaching his conclusions, Dr, Feldman noted, among other things, that it was no longer appropriate for any physician to make a [reactive airway dysfunction syndrome] diagnosis without a clear understanding of the chemical involved and the extent of exposure. *No one has been able to identify with any specificity the chemicals to which [Freshley] was supposedly exposed* and even Dr. Miller acknowledged during his deposition that he could not say exactly to what chemical [Freshley] was exposed. For this, among other reasons, we find that Dr. Feldman's conclusions are not based on conjecture or speculation but are well supported by reliable and probative evidence contained in the record. Accordingly, we give greater weight to his opinions and conclusions than to any other treating or evaluating specialist.

(emphases added).

We hold the appellate panel erred in denying Freshley's claim because the substantial evidence in the whole of the record does not support the appellate panel's findings. *Skinner*, 394 S.C. at 432, 716 S.E.2d at 445 ("Our review is limited to

deciding whether the [appellate panel]'s decision is unsupported by substantial evidence or is controlled by some error of law."). While this court must not second-guess the appellate panel's weighing of evidence, the factual conclusions of the appellate panel may be reversed "if they are arbitrary or clearly wrong . . . ." *Russell v. Wal-Mart Stores, Inc.*, 445 S.C. 387, 394–95, 914 S.E.2d 838, 842 (2025); *Etheredge v. Monsanto Co.*, 349 S.C. 451, 456, 562 S.E.2d 679, 681 (Ct. App. 2002) ("A court 'may not substitute its judgment for that of any agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.'" (quoting *Tiller v. Nat'l Health Care Ctr. of Sumter*, 334 S.C. 333, 339, 513 S.E.2d 843, 845 (1999))).

Here, the substantial physical evidence in the record does not support appellate panel's findings. *Pack*, 381 S.C. at 536, 673 S.E.2d at 466 ("'Substantial evidence' is not a mere scintilla of evidence, nor the evidence viewed blindly from one side of the case, but is evidence that, considering the record as a whole, would allow reasonable minds to reach the same conclusion as the [appellate panel]."). First, the appellate panel found it "noteworthy" that Freshley's physicians did not have specific details about the department where he worked or the specific chemicals to which he was exposed. However, medical notes in the record indicate that Dr. Jona and Dr. Miller specifically discussed Freshley's job description, the length of time he had been in that position, and at least some of the chemicals to which he was exposed while in that position. Doctors are trusted to be able to differentiate between self-serving or unreliable information shared by patients and that which is medically relevant or significant. *See Clark v. Philips Elecs./Shakespeare*, 433 S.C. 186, 193–94, 857 S.E.2d 378, 381 (Ct. App. 2021) ("What people say when seeking medical help is usually self-serving and sometimes unreliable. Doctors are trained to detect such things, and we are confident that if the doctors believed they were duped into their opinions they would have said so."). Further, the MSDS for the seventeen chemicals in the shipping department revealed that many of the chemicals used in that department were harmful if inhaled as a vapor, mist, or fume. Dr. Miller testified that exposure to the chemicals on the MSDS was consistent with his opinion that Freshley's reactive airway disease was caused by exposure at his workplace.

Second, the appellate panel found that none of the physicians excluded Freshley's comorbidities as the basis of or as a contributing factor to his medical condition. However, this finding contradicts the conclusions reached by the physicians who physically treated Freshley. *Russell*, 445 S.C. at 394–95, 914 S.E.2d at 842 (noting that the factual conclusions of the appellate panel may be reversed "if they are arbitrary or clearly wrong"). The record contains evidence that Freshley's

shortness of breath was *not* explained by any of his comorbidities: Dr. Miller, Dr. Jona, Dr. Guha, and Dr. Sturdivant all examined Freshley and ordered tests to determine the cause or causes of Freshley's shortness of breath, and both Dr. Jona and Dr. Miller determined his symptoms were caused by occupational asthma and not by comorbidities or other conditions. Dr. Sturdivant eliminated Freshley's cardiac issues as the cause of his shortness of breath. While the appellate panel is free to disregard these tests and conclusions, *Russell*, 445 S.C. at 394, 914 S.E.2d at 842 (noting that the appellate panel does not have to "accept even uncontradicted evidence"); finding that *none* of the physicians could exclude comorbidities as a cause of Freshley's shortness of breath does not comport with the record. Rather, this finding reflects the conclusion reached by Dr. Feldman, which we address below.

Finally, we hold Dr. Feldman's opinion—to which the appellate panel gave great weight—is neither reliable nor substantial because it is directly contradicted by the physical evidence in the record. *Id.* at 394–95, 914 S.E.2d at 842 ("[T]he [a]ppellate [p]anel's factual decisions may be reversed if they are arbitrary or clearly wrong[.]"); *Poston*, 208 S.C. at 38, 36 S.E.2d at 860 ("[A] medical opinion which conflicts with the physical facts will not be permitted to control the determination of a factual controversy." (quoting *Moyle*, 201 S.C. at 146, 21 S.E.2d at 564)). Dr. Feldman concluded that Freshley's medical records did not support the diagnosis reached by Freshley's treating physicians because they lacked knowledge about the specific chemicals to which Freshley was exposed and because they failed to exclude comorbidities or pre-existing medical conditions as the cause of Freshley's symptoms, specifically shortness of breath. Dr. Feldman ultimately concluded that Freshley did not have any asthma-like disease at all. However, Dr. Feldman did not review the MSDS, nor did he access Dr. Sturdivant's notes or deposition that ruled out Freshley's cardiac issues as the cause of his shortness of breath. Additionally, contrary to Dr. Feldman's opinion, the record contains evidence that excludes several of the conditions described by Dr. Feldman as potential alternative causes of Freshley's symptoms. For example, the record shows that Freshley had been compliant with his CPAP for years when he received the reactive airway disease diagnosis; he no longer had cardiomyopathy; and the CPET showed abnormal cardiac *and* pulmonary impairment. Additionally, the medical evidence reflects that Freshley responded to bronchodilators, which indicates the presence of a small airways disease and contradicts Dr. Feldman's conclusion that Freshley's shortness of breath stemmed not from an airway disease but rather from one of his other diagnosed conditions. Given that Dr. Feldman's opinion appears to conflict with the record as a whole, it must "not be permitted to control the determination" of the

factual controversy in this case, i.e., whether Freshley suffered from an occupational disease. *Poston*, 208 S.C. at 38, 36 S.E.2d at 860.

In sum, we reverse the appellate panel's decision because its findings are unsupported by reliable, substantial evidence in the record. We are not in the position to weigh the remaining evidence—Dr. Miller's deposition and notes, Dr. Sturdivant's deposition and notes, Dr. Jona's and Dr. Guha's medical notes, the hearing testimony from Freshley, Brooks, and Chaisson, the MSDS sheets, and various medical testing results—to determine the remaining elements of the *Fox v. Newberry County Memorial Hospital* six-element test. Thus, we remand to the appellate panel to apply the test to determine whether Freshley met his burden to proving he contracted an occupational disease.

As our holding on this issue is dispositive, we need not reach the remaining issues on appeal.[4] *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of prior issue is dispositive).

## CONCLUSION

Based on the foregoing, the appellate panel's order is reversed and remanded.

**WILLIAMS, C.J., and GEATHERS and TURNER, JJ., concur.**

---

[4] While we do not reach the remaining issues, we take note of our courts' precedent that, once an employee has proven a compensable disease, the burden of proving the percentage of the claimant's disability caused by non-compensable causes shifts to the employer. *See Hanks v. Blair Mills, Inc.*, 286 S.C. 378, 385, 335 S.E.2d 91, 95 (Ct. App. 1985) (holding the employer failed to present any evidence of the percentage of the claimant's disability caused by non-compensable causes); *Mizell v. Raybestos-Manhattan, Inc.*, 281 S.C. 430, 434, 315 S.E.2d 123, 125 (1984) (holding that though the evidence revealed the claimant had smoked cigarettes for years and smoking can cause lung cancer, the employer and its insurer failed to elicit medical testimony that smoking caused a percentage of the disability which resulted in death).